[Civ. No. 1397.    Third Appellate District.—December 21, 1915.]

## THE CITY OF SACRAMENTO (a Municipal Corporation), Appellant, v. GEORGE SWANSTON, Respondent.

EMINENT DOMAIN—ATTORNEYS' FEES AS COSTS—CONSTITUTIONAL PROVISION.—The portion of section 1255a of the Code of Civil Procedure which authorizes the court upon the abandonment by the plaintiff of a proceeding in eminent domain to include in the costs assessed against the plaintiff the fee of the defendant's attorney in the proceeding, is not violative of the fourteenth amendment of the federal constitution, nor of the provisions of the state constitution requiring that laws of a general nature shall be uniform in their operation and prohibiting the passage of special laws.

ID.—CHARACTER OF PROCEEDING.—The proceeding to condemn property under the right of eminent domain is so differentiated from the ordinary actions or proceedings in courts of justice as to bring it within the settled test justifying the assignment of the proceeding to a particular class, for the purpose of reasonable provisions not applicable to other classes of actions.

ID.—EXERCISE OF POWER OF EMINENT DOMAIN—AGENCIES OF STATE—CONDITIONS.—The persons, artificial or otherwise, upon whom the right to exercise or invoke on specified occasions the power of eminent domain is conferred by the state or the legislature, are mere *agents of the state* for that particular purpose, and the legislature, in conferring such right, has the authority to impose any reasonable conditions upon its exercise by them that it sees fit.

ID.—SPECIAL LAWS—POWER OF LEGISLATURE.—It is competent for the legislature to pass laws which are designed to apply to or operate upon a certain class of persons only, but the class to which the law is solely to apply must be founded upon some natural, intrinsic, or constitutional distinction; and there must be no arbitrary discrimination between parties standing in the same relation to the subject of such laws.

APPEAL from a judgment of the Superior Court of Yolo County dismissing action.   N. A. Hawkins, Judge.

The facts are stated in the opinion of the court.

Archibald Yell, for Appellant.

Arthur C. Huston, and Driver & Driver, for Respondent.

HART, J.—The action is in eminent domain for the condemnation of certain lands belonging to the defendants.

The jury assessed the damages accruing to the lands described in the complaint by reason of the taking thereof for the purposes of the plaintiff, and in due time after the verdict so rendered and entered the court, upon its findings of fact and conclusions of law, entered judgment of condemnation in the amount of damages admeasured by the jury.

The plaintiff having failed, within thirty days after the final judgment of condemnation, to pay the amount at which the damages as to the defendant Swanston's lands were appraised or fixed by the jury, as required by section 1251 of the Code of Civil Procedure, the court, in accordance with the provisions of section 1255a of said code, upon motion of said defendant, entered a judgment dismissing the action and taxing costs against the plaintiff. Included in the costs so allowed to the defendant is an attorney's fee of three thousand dollars, such a fee constituting, under the terms of section 1255a, *supra,* an item of costs which, with other legal costs, may be allowed against a plaintiff in condemnation proceedings where there has been an express or implied abandonment of such proceedings by the plaintiff at any time after the filing of the complaint.

This appeal is prosecuted by the plaintiff from said judgment of dismissal.

The principal, and, indeed, the sole complaint against the judgment arises from the allowance by the court of an attorney's fee to the defendant, the plaintiff claiming that so much of section 1255a of the Code of Civil Procedure as authorizes the court, upon the abandonment of the proceedings by the plaintiff and thereupon the entry of judgment of dismissal, to include in the costs assessed against the plaintiff the fee of the defendant's attorney in the proceeding, is unconstitutional and void for these reasons: 1. That said section in the particular mentioned violates the fourteenth amendment of the federal constitution; 2. That it contravenes certain provisions of our state constitution requiring that laws of a general nature shall be uniform in their operation and prohibiting the passage of special laws.

For the support of their position as thus stated, counsel for the plaintiff rely principally upon the case of *Builders' Supply Depot* v. *O'Connor,* 150 Cal. 265, [119 Am. St. Rep. 193,

11 Ann. Cas. 712, 17 L. R. A. (N. S.) 909, 88 Pac. 982], and the cases therein cited. In the case just named, the supreme court held to be violative of the fourteenth amendment of the federal constitution and of the provisions of our state constitution requiring that every law of a general nature shall have a uniform operation and prohibiting the passage of special laws, the provision of our mechanics' lien law which authorized the allowance by the trial court in actions to foreclose mechanics' and laborers' liens, ''as part of the costs . . . reasonable attorney's fees . . . , to be allowed to each lien claimant whose lien is established, whether he be plaintiff or defendant.''

The reasoning of the court in that case is, substantially: That it is a provision which imposes a penalty upon the defendants in such an action for a failure to pay certain debts, and thus the law singles out a certain class of debtors and punishes them when, for like delinquencies, it punishes no others. They are, therefore, not treated as other debtors, or equally with other debtors. ''If the litigation terminates adversely to them,'' so proceeds the reasoning, ''they are mulcted in the attorneys' fees of the successful plaintiff; if it terminates in their favor, they recover no attorneys' fees. It is no answer to say that they are punished only when adjudged to be in the wrong. They do not enter the courts upon equal terms. They must pay attorneys' fees if wrong. They do not recover any if right; while their adversaries recover if right and pay nothing if wrong.'' Thus, so goes the argument, in suits to which they are parties they are discriminated against, do not stand equal before the law and are denied its equal protection, in violation of the fourteenth amendment of the federal constitution. (*Gulf etc. Ry. Co.* v. *Ellis,* 165 U. S. 150, [41 L. Ed. 666, 17 Sup. Ct. Rep. 255].)

In support of the position that the provision of the law concerned here involves special legislation or the granting of special privileges, rights, and immunities, contrary to certain specific inhibitions of section 25 of article IV of the constitution, the court, in the Builders' Supply Co. case, cites the following cases, which are also cited here: *Davidson* v. *Jennings,* 27 Colo. 187, [83 Am. St. Rep. 49, 48 L. R. A. 340, 60 Pac. 354]; *Atkinson* v. *Woodmansee,* 68 Kan. 71, [64 L. R. A. 325, 74 Pac. 640]; *Perkins* v. *Boyd,* 16 Colo. App. 266, [65 Pac. 350]; *Hocking Val. Coal Co.* v. *Rosser,* 53 Ohio St. 12, [29

L. R. A. 386, 41 N. E. 263] ; *Grand Rapids Chair Co.* v. *Runnels,* 77 Mich. 104, [43 N. W. 1006] ; *Wilder* v. *Chicago Ry. Co.,* 70 Mich. 382, [38 N. W. 289] ; *Openshaw* v. *Halfin,* 24 Utah, 426, [91 Am. St. Rep. 796, 68 Pac. 138] ; *Durkee* v. *Janesville,* 24 Wis. 464, [9 Am. Rep. 500]. In all these cases, with the exception of *Wilder* v. *Chicago Ry. Co.,* 70 Mich. 382, [38 N. W. 289], and *Durkee* v. *Janesville,* 28 Wis. 464, [9 Am. Rep. 500], in which, however, the identical principle is discussed and the same rule applied, statutes providing for laborers' or mechanics' liens are involved. As seen, the reasoning by which the conclusions in those cases are arrived at is substantially the same as that upon which the United States supreme court, in *Gulf etc. Ry. Co.* v. *Ellis,* 165 U. S. 150, [41 L. Ed. 666, 17 Sup. Ct. Rep. 255], declared the Texas statute authorizing the allowance of attorneys' fees to persons having a *bona fide* claim for services, or for damages against a railroad company for stock killed, was unconstitutional and void, as in violation of the fourteenth amendment of the federal constitution.

There have been no other provisions of law, either organic or statutory, which have been the source of so wide a range of discussion or which have been more difficult to apply in given cases than those inhibitions of the state and federal constitutions whose purpose is to establish equality before the law, and, therefore, the uniform operation of all laws of a general nature and the prohibition of class and special legislation.

It is not true that any law which is designed to operate upon a particular class of persons or property involves special legislation or is wanting in uniformity of operation or denies to a person the equal protection of the law within the meaning of the constitutional guaranties relating to those subjects. Indeed, that even special laws are in certain cases permissible under our present state constitution and the cases expounding the provision which, by implication at least, authorizes such legislation, is a well-settled proposition. (Art. IV, sec. 25, subd. 33; *People* v. *McFadden,* 81 Cal. 498, [15 Am. St. Rep. 66, 22 Pac. 851] ; *People* v. *Mullender,* 132 Cal. 221, [64 Pac. 299] ; *Board of Directors* v. *Nye,* 8 Cal. App. 527, 542, 543, [97 Pac. 208].) It is true, however, that the design of the framers of our present constitution, by inserting into that instrument provisions prohibiting class or

special legislation, was to correct or prevent a repetition of the evils which grew up under the constitution which the present superseded from the vast amount of special legislation, applying only to certain persons and things, which found its way to our statute books. The result is that now special legislation is not, as formerly, generally permissible, but only allowable where the exigency of the occasion imperatively calls for a special law.

It is obvious, however, that the case now before us is not of that class where a resort to special legislation is necessary or contemplated by subdivision 33 of section 25 of article IV of the constitution. The sole question here, then, is, whether the law in question as to the particular provision thereof under review, being a law of a general nature, is wanting in uniformity in its operation, or whether it is a special law within the constitutional inhibition in that regard or offends the mandate of the national constitution against the passage of laws having the effect of denying to any person within the jurisdiction of this state the equal protection of the laws.

What is meant by the provision of our constitution that "all laws of a general nature shall have a uniform operation" (art. I, sec. 11)—a provision which was contained in the state constitution of 1849—was as clearly and logically explained as that language has ever been, judicially, in the very early case of *Smith* v. *Judge Twelfth District Court,* 17 Cal. 555, by the late Judge Baldwin, voicing the views and conclusion of the court. In that case, the question was as to the validity of a statute passed by the legislature not only authorizing but making it the duty of the judge of the district court of this state to transfer a criminal case for trial from the city and county of San Francisco, where the crime was committed, to the district court of the eleventh judicial district, in and for Placer County. The constitutionality of said act was upheld, it being permissible under the constitution of 1849 to pass special laws, with the result that there was had under that instrument special legislation upon an infinite variety of subjects. The court in that case said: ". . . The construction given to the word 'uniform,' in this view (the view urged by counsel), is *universal.* . . . But this is absurd, for different classes of crimes may and do call for different modes of procedure. . . . But the error is in a misapprehension of this term *uniform.* The language must be carefully noted. It is not

that all laws shall be universal or general in their application *to the same subjects,* nor is it even that all 'laws of a general nature' shall be *universal* or general in their application *to such subjects;* but the expression is that these laws 'of a general nature' shall be 'uniform *in their operation*'—that is, that such laws shall bear equally, in their burdens and benefits, upon persons standing in the same category. But this category depends upon facts which characterize the offense. Every defendant is not entitled to the same privileges, or subject to the same burdens, as every other; for instance, some are entitled to bail, others not, and this depends upon the particular facts characterizing the imputed crime. When we speak of uniformity in the operation of a law, we speak of that operation which is equal *under the same facts;* for what justice or uniformity would there be in applying the same rigor of remedy or the same measure of criminality, merely because there existed a similarity or identity in the general charge? The *effect* of laws of a general nature shall be the same to and upon all; but who are 'the all' who are the subjects of this operation? Obviously, the answer is, all who stand in the same relations to the law; all, in other words, the facts of whose cases are the same. To treat one man differently from another man—to deny to one man a privilege extended to another man—is not partiality; it may be a just discrimination; to constitute partiality and the invidious discrimination against which the constitution aims, the denial to another of what is given to one must be made upon substantially the same facts; or, to express the idea differently, the denial must be *of the same claim* before accorded.''

Although, as stated, the framers of our present constitution took particular pains to guard against the indiscriminate enactment of laws the effect of which was to operate only upon particular persons or things, still, in the very nature of things, it was and is impossible, in a state, like ours, having a variety of interests calling for diverse kinds of legislation, sometimes antagonistic to each other, and where, therefore, a single rule, universal in its application throughout the commonwealth, would operate as a distinct and positive detriment to the interests of certain localities or certain classes of people, to present a system of laws alike applicable to all of the great variety of conditions in the state. Hence, the framers of

the constitution recognized the necessity of laws which, in a sense, would be special so far as their operation was concerned—special in the sense that they applied or were to apply to certain classes of persons or things only to the exclusion of all other classes. It is, therefore, competent for the legislature to pass laws of this character; that is, laws which are designed to apply to or operate upon a certain class of persons only, but the rule is that the class to which the law is solely to apply must be founded upon some natural or intrinsic or constitutional distinction, or, in other words, "the individuals to whom the legislation is applicable must constitute a class characterized by some substantial qualities or attributes of such a character as to indicate the necessity or propriety of certain legislation restricted to that class." (*City of Pasadena* v. *Stimson,* 91 Cal. 251, [27 Pac. 604], and numerous other cases cited on page 536 in *Board of Directors* v. *Nye,* 8 Cal. App., [97 Pac. 208]. And, furthermore, lest by such enactments, the constitutional inhibition against special legislation may be violated, it is the rule that, in the passage of laws designed to operate upon a particular class only, there must be no arbitrary discriminations between parties standing in the same relation to the subject of such law, and that if, by such laws, such discriminations are made, then the legislation will fall under the force of the constitutional mandates against special enactments. (*Ex parte King,* 157 Cal. 161, [106 Pac. 578], and cases therein cited.) And in that case it is further said: "If it [the law] operates uniformly upon all members of such class, it necessarily has the 'uniform operation' required by section 11 of article I of the constitution. The question whether the individuals affected by a law do constitute such a class is primarily one for the legislative department of the state, and it is hardly necessary to cite authorities for the proposition that when such legislation is attacked in the courts, every presumption is in favor of the legislative act. Where, upon the facts legitimately before a court, it is reasonable to assume that there were reasons, good and sufficient in themselves, actuating the legislature in creating the class, though such reasons may not clearly appear from a mere reading of the law, such assumption will be made, and the legislation adopted. To warrant a court in adjudging the act void on this ground, it must clearly appear that there was no reason sufficient to warrant the legislative de-

partment in finding the difference and making a discrimination.'' (See *Grumbach* v. *Lelande,* 154 Cal. 679, 685, [98 Pac. 1059].)

Thus we are now brought face to face with the concrete proposition submitted for decision in this case, and by the light of the principles above stated the question must be considered and determined.

Eminent domain is an attribute of sovereignty and the right or power of a sovereign state to appropriate private property to particular uses without the consent of the owner. The taking of private property by the state, in the exercise of this power, cannot be, abstractly viewing it, less justifiable on moral grounds than the enforced taking of private property by one individual from another for the latter's private uses. It is justifiable only because the power makes for the common benefit, and is upheld upon the theoretical conception that every owner of private property takes and holds such property subject to the condition that the state may take it from him, if occasion discloses that the common welfare will be the better subserved by its public use than by its private ownership. The people of the state, or that portion of the people who are vested with the right of franchise, in whom the power resides, have delegated the power to the legislature, and the latter, in turn, has constituted certain specified persons as the agents of the state for the exercise of the power in particular instances. The constitution of this state, as does that of nearly every other state, provides that, in the exercise of this power, no property shall be taken or damaged without just compensation having been made to, or paid into court for, the owner. (Art. I, sec. 14.) Notwithstanding the condition thus imposed as a prerequisite so to take one's property, the fact remains that when property is taken under the right of eminent domain, it is taken against the will or consent of the owner. And private property may thus be taken, even if the owner, for reasons peculiar to himself, would prefer to retain it rather than to receive for it a sum vastly in excess of its actual value for any practical purpose to which it might be put. In brief, when the state, through any of its duly constituted agencies, makes a call for the property for a public use, it must be surrendered in any event; and whether the ''property'' referred to in the constitution be merely the *rights* in the thing so desired or the *thing* itself, it is never-

theless true that the enforced giving up of the rights therein amounts in practical and substantial effect to a like giving up of the title to the *thing* itself. The result is that when this power is sought to be visited upon particular privately owned property, the owner thereof is, if proceedings in condemnation be found necessary, forced into litigation as to the subject matter of which he is in no way in default or for which he is not responsible in the sense in which a defendant who has breached a contract or by affirmative acts on his part has deprived the plaintiff of a right or imposed upon him a wrong is responsible for litigation. He, in short, although not desiring to give up his property for the price offered for it, or at all, and, although acquiring title to it subject to the burdens which follow from an inherent power or *legal* right in the people in their sovereign capacity, does not invite the litigation, nor is he the *actor* therein, as one who violates a contract or commits some private wrong invites the litigation necessary to enforce the obligations of the contract or to correct the wrong.

Thus it must at once become obvious that a proceeding for the condemnation of private property for a public use, under the power of which we have been speaking is, in its origin, its purpose and its characteristics, essentially different from any other action or proceeding established by our law as an instrumentality for the enforcement of a private right or the redress or prevention of a private wrong. It is, indeed, not included by the code within the category of ordinary actions at law or suits in equity, but is denominated, with others, as a "special proceeding," and even as to other proceedings so denominated in the code, it is, by reason of the characteristics peculiar to it, strictly *sui generis.* It, therefore, cannot be doubted that the proceeding to condemn property under the right of eminent domain is so differentiated from the ordinary actions or proceedings in a court of justice "by which one party prosecutes another for the enforcement or protection of a right, or the redress of a private wrong," as to bring it within the settled test justifying the assignment of the proceeding to a particular class for the purposes of reasonable provisions not applicable to other classes of actions. The test in that regard is: If the classification is "based upon some difference bearing a reasonable and just relation to the act in respect to

which the classification is attempted," any reasonable special provision as to the action so classified, and which is not applicable to other classes, will not be held to be void as involving special or discriminatory legislation within the constitutional provisions upon that subject. This rule is conceded in all the cases, and is elaborately considered by Chief Justice Angellotti in the case of *Engebretson* v. *Gay,* 158 Cal. 30, 32, [109 Pac. 880], in which, after reviewing many cases, including *Builders' Supply Depot* v. *O'Connor,* 150 Cal. 265, [119 Am. St. Rep. 193, 11 Ann. Cas. 712, 17 L. R. A. (N. S.) 909, 88 Pac. 982], mainly relied upon by the appellant here, it is held that a provision in the street improvement act of 1885, allowing, in addition to the taxable costs, an attorney's fee to the plaintiff in an action to foreclose a lien upon property improved under said act, is not discriminatory or violative of the state constitutional inhibition against special legislation or of any provision of the federal constitution. The theory of the decision, as we understand it, is that, as may be done where there is default in the payment of the ordinary taxes assessed against property, the legislature has the right to impose upon those defaulting in the payment of street assessments for the improvement of streets a penalty which may include a reasonable attorney's fee.

In the case at hand there exists no basis for the reasoning which led to the conclusion arrived at in *Builders' Supply Depot* v. *O'Connor,* 150 Cal. 265, [119 Am. St. Rep. 193, 11 Ann. Cas. 712, 17 L. R. A. (N. S.) 909, 88 Pac. 982], and in *Gulf etc. Ry. Co.* v. *Ellis,* 165 U. S. 150, [41 L. Ed. 666, 17 Sup. Ct. Rep. 255]. In those cases it was held, as we have seen, that an allowance to the plaintiff of an attorney's fee if he was victorious in the trial was distinctly discriminatory, because no such allowance was provided for for the defendant in case he prevailed at the trial. In this case, however, as in no other case of which we can presently think, the statute gives to the plaintiff the right to abandon the proceeding, even after a trial thereof and a verdict and judgment of condemnation rendered and entered, and, as a penalty for such abandonment, accords to the defendant the right to be reimbursed by the plaintiff for not only the ordinary costs but an attorney's fee. No right of abandonment is awarded by the statute to the defendant, and, in the very nature of the case, there could not be so that it would affect or impair the right

of the plaintiff to condemn and take his property. The conditions as to the two parties in the proceeding are essentially and radically different.

But, in our judgment, the real rationale of the authority of the state, to which the sovereign power has delegated the jurisdiction over the right of eminent domain, to exact from the plaintiff the payment as costs of a reasonable attorney's fee to the defendant under the circumstances indicated in the statute and which, in our opinion, could be so exacted in any event or under any circumstances, lies in the control, hedged only by limited constitutional restraints, it has over that sovereign right.

As before explained, the persons, artificial or otherwise, upon whom the right to exercise or invoke on specified occasions the power of eminent domain is conferred by the state or the legislature are mere *agents of the state* for that particular purpose. They are, in other words, by the state specially clothed with power to exercise a right of sovereignty which they could not exercise but for the action of the legislature in clothing them with the authority of agents for that purpose. The act of conferring that power upon those persons is entirely and purely voluntary upon the part of the state. The state cannot be compelled to part with it by conferring it upon other persons desiring to exercise it, but may withhold it and itself exercise it, subject, of course, to the constitutional restraints referred to, to the exclusion of all other persons or instrumentalities. Therefore, no one will dispute the right in the legislature, in conferring the right to exercise the power of eminent domain upon others, to impose any reasonable conditions upon its exercise by those others as it sees fit. In this state it has imposed upon those in whom it has invested that right, as one of the conditions upon which they may exercise it, the requirement that, in case they abandon the proceedings in condemnation after they have instituted them, they must pay the defendant, in addition to ordinary taxable costs incurred by him by reason of the proceeding, reasonable attorneys' fees. The condition is not an unreasonable one to impose in such a case. The right of eminent domain involves an extraordinary power of sovereignty. While it is an eminently proper and necessary right of sovereignty, its exercise should be carefully guarded so as to prevent abuses arising under it. The legislature can, as

stated, and it should, impose upon its exercise such reasonable conditions as will discourage litigation not founded upon merit arising under it, or as will penalize to a reasonable extent those who resort to it with the intention of securing property at the price they appraise it for and abandoning the proceeding if the value fixed by the jury and court are in excess thereof even only in a reasonable amount. Under the statute complained of here, if the plaintiff accepts the property at the price at which it is judicially appraised, the defendant only receives the compensation so fixed. If the property is not accepted by the plaintiff, then he must reimburse the defendant for the expenses which he has been compelled to bear in litigation for which he was not responsible.

Thus it is plainly to be seen that the section of the code in question does not impinge upon any provision either of the state or federal constitution. The provision animadverted upon here applies alike to all of the class to which the section applies. It does not discriminate as between persons belonging to that class and denies to none the equal protection of the law.

The views thus expressed are in accord with those advanced upon precisely the identical question by the adjudicated cases. Some of these cases we have already referred to. But there is another case to which we may well refer in connection with the observations last above made. The case is from the supreme court of Illinois. In that state, the legislative law upon eminent domain, among other provisions, contains one like ours, allowing the defendant, in proceedings to condemn property under the right of eminent domain, his costs and attorneys' fees, to be taxed against the plaintiff, when the latter dismisses or abandons the proceeding. In *Sanitary District of Chicago* v. *Bernstein,* 175 Ill. 215, [51 N. E. 720], the validity of the provision of the statute of said state so allowing attorneys' fees was challenged upon constitutional grounds similar to those urged here. The Illinois court disposed of the objections in a well-considered opinion, from which we here present an extended excerpt because of its cogent application to the present case:

"The ground upon which it is argued that the provision is unconstitutional is that it is special legislation, and imposes upon one class of litigants a charge from which all others in-

stituting proceedings in court are free. Any other plaintiff or petitioner may dismiss his suit while pending and suffer no penalty beyond the payment of statutory costs; while, if a petitioner under the eminent domain act shall, for any cause, dismiss the petition, the statute gives a right to the defendant to recover, in addition to the taxable costs, the amount paid or incurred by him for costs, expenses, and reasonable attorneys' fees in his defense. Every citizen has an equal right with every other to resort to the courts of justice for the settlement and enforcement of his rights; and it is true that a discrimination between different classes of litigants, which is merely arbitrary in its nature, is a denial of that right and of the equal protection of the law. If, however, there be a reasonable ground of distinction, so that the discrimination does not appear to be purely arbitrary or evasive of constitutional rights, we think that the legislature has a discretion to impose conditions or restrictions which they may deem in furtherance of justice. That discretion cannot be controlled by the courts, but its exercise must be left to the wisdom and sense of justice of the legislature. We think that no one will fail to observe a difference, in principle and natural justice, between a litigation where plaintiff invokes the action of the court to recover money or property from another, and dismisses such action, and a proceeding to ascertain the compensation to be paid for property to be taken for public use. The constitution protects the owner by a provision that his property shall not be taken for public use without just compensation. The proceeding is not the enforcement of individual right, but to settle the condition upon which the sovereign power to take the property may be exercised. The judgment is not binding upon the petitioner, but it may decline to enter upon the property or to make payment of compensation. If the possession is taken, and the compensation paid, the owner gets nothing but the fair cash market value of his property; and if it is not paid, or the attempted taking is discontinued by the dismissal of the petition, he is a loser to the extent of the amount expended. The act seems to be in harmony with the spirit and intent of the constitution, and we think it valid.'' (See, also, *Gano* v. *Minneapolis & St. Louis R. R. Co.,* 114 Iowa, 713, 89 Am. St. Rep. 393, [55 L. R. A. 263, 87 N. W. 714], and cases therein cited.)

The city attorney, representing the plaintiff in this proceeding, has presented his side of the case here in a forceful and masterly and an earnest manner; but the authorities are clearly against his position, and, as must be manifest from the discussion herein, we are, upon the authorities as well as upon principle, constrained to the conclusion that the law under attack on this appeal is not amenable to the objections on constitutional grounds urged against it.

The judgment is, accordingly, affirmed.

Chipman, P. J., and Burnett, J., concurred.