[Civ. No. 10776. First Appellate District, Division One.—December 28, 1938.]

HENRY H. LUDOLPH, Respondent, v. THE BOARD OF POLICE COMMISSIONERS OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

212

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, for Appellants.

Walter H. Duane, J. W. Ehrlich and Leo R. Friedman for Respondent.

GEARY, J., *pro tem.*—Appeal by defendant The Board of Police Commissioners of the City and County of San Francisco, and the named individual commissioners composing

said board from a judgment of the Superior Court in and for the City and County of San Francisco annulling upon *certiorari* the order of the defendant board dismissing respondent from the police department.

In the spring of 1936 the grand jury was conducting an inquiry regarding alleged corruption in the police force of San Francisco. In the course of the inquiry it sought information concerning the property and income of certain members of the department. Some police officers when subpoenaed as witnesses before the grand jury assumed the position that that body was without authority to inquire into the income, bank accounts and property of police officers and refused to testify. On May 6, 1936, and for some time prior thereto respondent was a lieutenant in the San Francisco police department. On that date when summoned to appear before the grand jury he refused to testify for the reason stated. On May 12, 1936, the Board of Police Commissioners amended rule 46, section 19, of its rules and regulations, to read:

"Section 19. Members of the department when called upon to give evidence, or when making depositions or testifying before any court, officer, or competent tribunal, or before the grand jury, or the Board of Police Commissioners will conduct themselves with dignity, courtesy and respect, and state clearly and without reservation, all facts pertaining to the case, admissible in evidence or matters under investigation."

This amendment by resolution was immediately effective and was "published in orders" of the police department with notice that violation of the rule would result in immediate suspension of and the filing of formal charges against the offender before the Board of Police Commissioners. That respondent had personal notice of the amendment and the threatened result of the violation thereof is not questioned. On May 15, 1936, respondent was again subpoenaed before the grand jury and again for the same reason refused to testify. Thereupon two charges against respondent were filed with the board by his immediate superior. One complaint charged him with "conduct unbecoming an officer and insubordination", in which it is alleged that the refusal of respondent to testify assisted in bringing discredit upon, destroyed the public confidence in, and subverted the good discipline and efficiency of the police department. The other

charged respondent with "conduct unbecoming an officer and disobedience of orders" and is based upon the specific violation of section 19, rule 46, of rules and regulations, as amended. On July 3, 1936, after a full and complete hearing, respondent, Lieutenant Roche, Patrolman Gurtler and eleven other members of the department were found guilty of the respective charges against them. The last-mentioned eleven police officers were thereupon summarily dismissed from the department. As regards respondent, Lieutenant Roche and Patrolman Gurtler the transcript of the proceedings before the board discloses the following: "President Roche: In regard to these last three cases, Roche, Gurtler and Ludolph, from the evidence it is quite apparent that these three men, before the matter was finally determined by the Superior Court, manifested their desire to testify fully, freely and completely before the grand jury. The judgment of this commission is that these matters be postponed until the 3d day of August, 1936, for judgment, upon the understanding, however, that these three officers will consent that during this period, and while their suspensions remain in effect, that they waive their right to salary." Thereafter, Lieutenant Roche again refused to testify before the grand jury and was dismissed from the department. Patrolman Gurtler appeared and testified before the grand jury and was reinstated. Respondent appeared and testified and his case was thereafter regularly continued for judgment until August 31, 1937. Upon that date the board unanimously voted the judgment to be dismissal from the department.

Subsequent to July 3d, when respondent was found guilty of the charges against him, and following his reappearance and testifying before the grand jury, he was indicted by that body. It appears he was subsequently acquitted upon one of the charges by a trial jury, and the other was dismissed in open court on motion of the district attorney in August, 1937. On August 31, 1937, when respondent's case came on regularly for judgment three new commissioners had been appointed and qualified in the place and stead of the members comprising the board when respondent was found guilty. Upon the case being called counsel for respondent requested leave to argue the facts. In the course of the argument portions of the transcript of evidence educed before the grand jury were read by both counsel for respondent and for the board. This included testimony of respondent and other wit-

nesses, including "tapped" telephone conversations and related to conduct of respondent subsequent to July 3, 1936, when he was found guilty and suspended.

This testimony if believed would indicate that respondent was on terms of intimacy with an individual whose alleged corrupt influence upon the police department was then under investigation by the grand jury. It would also tend to establish that while under suspension respondent had actively sought for another, the assistance of this particular individual to secure wire service for bookmaking purposes. Testimony of one Lombardi taken before the board on July 12, 1937, was likewise read. Respondent was sworn and testified in his own behalf and sweepingly denied the testimony educed against him both before the grand jury and before the board. Upon the conclusion of the hearing the judgment of dismissal was voted by the board.

Respondent contends here, as in the court below, that the board acted in excess of its jurisdiction and in violation of his constitutional rights. He claims the hearing on August 31, 1937, was a new and separate trial of acts allegedly occurring when he was under suspension and no longer amenable to the rules and regulations of the department; that no formal charges embracing these acts were ever filed against him as provided by the charter and the board's action thereon amounted to depriving him of property without due process of law. It is further contended that when after conviction both he and Patrolman Gurtler availed themselves of the opportunity to testify before the grand jury, the failure of the board to reinstate him as it did Gurtler deprived him of "the uniform operation and protection of the law".

The Charter of the City and County of San Francisco, section 155 thereof, provides:

"Members of the fire or police department guilty of any offense or violation of the rules and regulations of their respective departments, shall be liable to be punished by reprimand, or by fine not exceeding one month's salary for any offense, or by suspension for not to exceed three months, or by dismissal, after trial and hearing by the commissioners of their respective departments.

"Members of either department shall not be subject to dismissal, nor to punishment, for any breach of duty or mis-

conduct, except for cause, nor until after a fair and impartial trial before the commissioners of their respective departments, upon a verified complaint filed with such commission, setting forth specifically the acts complained of, and after such reasonable notice to them as to time and place of hearings as such commission may by rule prescribe. . . . ''

The authority thus conferred upon the board is pursuant to the provisions of our state Constitution and is of a judicial character exercised by a *quasi*-judicial body. (California Const., art. XI, sec. 8½ subd. 3; *Imperial Water Co.* v. *Supervisors,* 162 Cal. 14, 17, 18 [120 Pac. 780]; *Crane* v. *Board of Supervisors,* 17 Cal. App. (2d) 360, 364–366 [62 Pac. (2d) 189].) If, and only if, the board acted in excess of the jurisdiction granted *certiorari* will lie. (Code Civ. Proc., sec. 1068; *Fickert* v. *Zemansky,* 176 Cal. 443, 445 [168 Pac. 891]; *Nurses Registries Assn., etc.,* v. *Division of Labor Statistics, etc.,* 10 Cal. App. (2d) 292, 293 [51 Pac. (2d) 886]; *Faias* v. *Superior Court,* 133 Cal. App. 525, 529 [24 Pac. (2d) 567]; *Winning* v. *Board of Dental Examiners,* 114 Cal. App. 658, 665 [300 Pac. 866].)

The right to an office or of employment with the government or any of its agencies is not a vested property right, and removal therefrom will not support the question of due process. (*Matter of Carter,* 141 Cal. 316, 319 [74 Pac. 997]; *Boyd* v. *Pendegast,* 57 Cal. App. 504, 506, 507 [207 Pac. 713]; *Garvin* v. *Chambers,* 195 Cal. 212, 225 [232 Pac. 696].)

Respondent had been formally charged, tried and convicted of the charges against him. He admits that all of the proceedings thus far ''were regular and lawful and within the jurisdiction of that body''. After conviction the case was regularly continued for judgment to the meeting of August 31, 1937, at which, according to the transcript, the following occurred:

''The Secretary. Lieutenant Henry H. Ludolph.

''Mr. Ehrlich. Ready.

''The President. What form does this take, Mr. Pigott?

''Mr. Pigott (Attorney for The Board of Police Commissioners): The officer has been tried and convicted. Testimony may be taken after conviction for the purpose of determining the extent of punishment. Mr. Ehrlich: Have you anything that you want to offer on behalf of the defend-

ant before sentence is passed?'' It is clear that the purpose of the hearing and of the evidence received thereat was solely to assist the board in the exercise of its discretion in determining the penalty to be imposed upon respondent. Language in the record cited by respondent in support of the contention that he was being tried anew falls far short of establishing that fact; at most the words used appear to have been a mere inadvertence. The section of the charter quoted provides the extent of punishment might be from a reprimand to dismissal. Its determination rested in the discretion of the board. If the scope of the inquiry that followed was broader than usual, it must be remembered that judgment was to be imposed by a board wholly different in personnel from the one that tried him. Further, the record is completely silent of any objection by respondent to the procedure taken by the board. The record offers no basis for respondent to have indulged the belief that reappearing and testifying before the grand jury would automatically reinstate him in the department. Indeed, the board could not have even tacitly so agreed without closing its eyes to the possibility that the testimony might prove adverse to him or embarrassing to the department. That the evidence concerning respondent before the grand jury was not of a satisfactory nature is indicated by its action in the matter. While his acquittal of the charges of that body absolves him of criminal liability, it could neither serve to diminish nor extend the duty of the board in the premises. That is fixed by its primary obligations to the public upon the one hand, and to the individual concerned upon the other. A police force, small in numbers compared to the population it serves, is able to maintain law and order in direct proportion to the prestige it enjoys in a community. Its efficiency is immediately dependent upon the confidence it inspires and the respect which it is able to command. If the acts of an officer tend to impair the respect and confidence of the public in its police force, such conduct even though it be not of a criminal nature, may wholly destroy his usefulness in the department. We are not to be understood as approving or disapproving the sentence in the instant case. That is a matter which cannot concern the court. ■ An officer is entitled to have the rules and regulations of the department under which he holds a position fairly invoked and applied. (*Garvin* v. *Chambers, supra.*) However, when the guilt of

an officer is fairly established before the board in the mode provided by law, the punishment as fixed by the charter rests in the discretion of the board. (*Donovan* v. *Board of Police Commrs.*, 32 Cal. App. 392, 402 [163 Pac. 69] ; *Cleu* v. *Board of Police Commrs.*, 3 Cal. App. 174, 177 [84 Pac. 672].) In the absence of oppression and a showing of bad faith, the measure of this discretion is limited only by the terms of the charter and the board's sense of responsibility for the discipline and efficiency of the department it controls.

The rules and regulations of the department are applicable to every officer alike and trials on charges of violation thereof should substantially follow the same procedure in each case. It is not contended and the record does not disclose respondent was charged and tried in a different manner than other officers. The charter provisions were applied in his case in the same manner as in the case of other violators; in the same manner as in Gurtler's case, except as to penalty. It is manifest the board had authority to impose the penalty in question. The penalty in each case involves the discretion of the board; not its jurisdiction. (*People* v. *Judge, etc.*, 17 Cal. 547, 554, 555; *City of Sacramento* v. *Swanston*, 29 Cal. App. 212, 217 [155 Pac. 101].) Under such circumstances *certiorari* will not lie. (*Fickert* v. *Zemansky, supra; Donovan* v. *Board of Police Commrs., supra; McKenzie* v. *Board of Education*, 1 Cal. App. 406, 407 [82 Pac. 392].)

The judgment is reversed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 27, 1939, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 23, 1939.