[Civ. No. 4368.   Second Appellate District, Division One.—March 10, 1925.]

ROBERT E. CRONIN, Appellant, v. CIVIL SERVICE COMMISSION OF THE COUNTY OF LOS ANGELES et al., Respondents.

[1] CIVIL SERVICE—LOS ANGELES COUNTY—POWER OF SHERIFF TO APPOINT AND DISCHARGE DEPUTIES. — Prior to the adoption of the civil service provisions of the charter of the county of Los Angeles, the sheriff of said county, and all county officers thereof, had the absolute right to appoint and discharge any and all deputies and other employees required for the conduct of the office to which the principal had been appointed or elected.

[2] ID.—APPOINTMENT OF DEPUTIES — LIMITATIONS UPON POWER OF SHERIFF.—Prior to the adoption of the county charter, the sheriff of Los Angeles County had the absolute power to appoint all deputies in his office and fill their positions with persons of his choice, while after the adoption of said charter, and under its pro-

visions, he still has the right to appoint all such deputies, subject to the limitations that all appointments to positions in the classified service (which includes all deputies in his office, with the exception of the under-sheriff or chief deputy) must be made from the list of three persons certified to him by the Civil Service Commission and that no appointment to such positions shall be made because of the religious or political opinions or affiliations of the appointee.

[3] ID.—POWER TO DISCHARGE DEPUTIES — CHARTER LIMITATIONS. — With the exception of certain restrictions as to the right to discharge deputies and employees in the classified service while on probation, and also with the exception that the Los Angeles County Civil Service Commission was given the right to discharge from service those who fall below the standard of efficiency established by said Commission, the power which the sheriff of Los Angeles County possessed prior to the adoption of the county charter to discharge deputies and employees was *not changed by said charter* or by the rules prescribed by said Civil Service Commission.

[4] ID. — DISCHARGE OF DEPUTY — WRITTEN CHARGES — HEARING. — Neither subdivision 13 of section 34 of the Los Angeles County charter, nor rule XI, as prescribed by the Los Angeles County Civil Service Commission, which provide that a deputy in the classified service can only be discharged after he has been presented with the reasons for such discharge and has been allowed a reasonable time to reply thereto in writing, provides for any hearing upon the charges preferred against a deputy before the principal may discharge him—all that is required being that the officer discharging the deputy shall serve upon him, a reasonable time before his discharge, and file with the Commission, a statement of the reasons for the discharge; and where the principal has complied with such requirement, the discharge of the deputy is legal and effectual.

[5] ID. — NECESSITY FOR HEARING — JUDICIAL LEGISLATION. — The fact that a hearing by the Los Angeles County Civil Service Commission, before a principal can discharge a deputy, is most desirable, or that such hearing may be absolutely essential to the proper and adequate functioning of the system of civil service as applied to employees in the county offices, does not authorize the courts to supply such requirement in the charter where the freeholders, elected by the voters of the county, neglected to provide for such a hearing.

---

(1) 35 Cyc., p. 1518, n. 85, p. 1521, n. 19.     (2) 32 Cyc., p. 318, n. 31; 35 Cyc., p. 1518, n. 85.     (3) 35 Cyc., p. 1521, n. 19.     (4) 32 Cyc., p. 319, n. 42; 35 Cyc., p. 1521, n. 19.     (5) 12 C. J., p. 883, n. 98.

APPEAL from a judgment of the Superior Court of Los Angeles County. Bertin A. Weyl, Judge. Affirmed.

The facts are stated in the opinion of the court.

Joseph Scott and A. G. Ritter for Appellant.

Edward T. Bishop, County Counsel, and D. De Coster, and Phil C. Steery, Deputies County Counsel, for Respondents.

CURTIS, J.—Plaintiff Robert E. Cronin was, on the eleventh day of October, 1922, the duly appointed, qualified, and acting jailer of the county of Los Angeles. On said day William I. Traeger, the sheriff of said county, served written notice upon plaintiff, suspending him from his position as a jailer, and notifying him that on the twentieth day of said month he would discharge him from his position. With said notice said sheriff presented in writing to plaintiff his reasons for his intended discharge of plaintiff, and on the same day filed with the Civil Service Commission of said county a written copy of said reasons. The plaintiff, on October 17, 1922, filed with said Commission his written reply to said reasons. On the 27th of said month said sheriff served a second written notice upon plaintiff in which he notified plaintiff that he was discharged from his position as jailer. The plaintiff, in the belief that said discharge was illegal, made demand upon said Commission for a warrant covering his salary for the month of October, 1922, and upon the refusal of said Commission to certify said warrant, plaintiff instituted this action for a writ of mandate against said Commission and the members thereof to compel them to certify a warrant in plaintiff's favor for his salary as such jailer for the month of October, 1922. The trial court rendered judgment in favor of defendants, and from this judgment plaintiff has appealed.

The position taken by appellant is that under the provisions of the charter adopted by the county of Los Angeles, creating a civil service commission, and in force in said county at the time of his attempted discharge, the power to discharge an employee belonging to the classified service of said county was vested solely in the Civil Service Commission, and the principal under whom said employee was serving as a deputy was without any right to remove said em-

ployee from such position, and, furthermore that no such employee or deputy could be discharged in any instance except after a hearing had been had before said Commission upon the reasons or charges preferred against him and his reply thereto.

[1] We think it will be conceded, at least it is so well settled in this state that a citation of authorities in support thereof is unnecessary, that prior to the adoption of the civil service provisions of the charter of the county of Los Angeles the sheriff of said county, and, for that matter, all county officers thereof, had the absolute right to appoint and discharge any and all deputies and other employees required for the conduct of the office to which the principal had been appointed or elected. No claim is made by appellant that this power, originally possessed by county officers, has been limited in any way except by the provisions of said county charter. It follows, therefore, that at the time said sheriff discharged appellant, or attempted to discharge him, the only limitation, if any existed, upon his absolute power to appoint and discharge deputies and employees was to be found in the charter adopted by the county of Los Angeles and in force at said time. With regard to the power of the sheriff under said charter to appoint his deputies we are not concerned in this action, but the better to understand the whole scheme provided by the charter in the adoption of the civil service provisions thereof, it might be well to briefly refer to certain of its provisions governing the appointment, as well as those providing for the discharge, of deputies and employees.

Section 30 of the charter provides for the appointment, by the board of supervisors of the county, of a civil service commission to consist of three members.

Section 33 divides the officers, deputies, and employees of the county into two classes, namely, the unclassified and the classified service. The unclassified service comprises all officers elected by the people and members of certain boards, also certain deputies among which is one deputy in the office of the sheriff, known as under-sheriff or chief deputy. The classified service includes all other positions.

Section 41 provides that "No person in the classified service or seeking admission thereto shall be appointed, re-

duced or removed, or in any way favored or discriminated against because of his political or religious opinions or affiliations.''

Section 51 provides that ''Each county or township officer, board or commission, shall appoint, from the eligible civil service list, for either permanent or temporary service, all assistants, librarians, deputies, clerks, attaches and other persons in the office or department of such officer, board or commission, as the number thereof is fixed and from time to time changed by the board of Supervisors.''

Section 34 provides ''The commission shall prescribe, amend, and enforce rules for the classified service, which shall have the force and effect of law. . . . The rules shall provide: . . .

'' (2) For open, competitive examinations to test the relative fitness of applicants for such positions.

'' (6) For the appointment of one of the three persons standing highest on the appropriate list.

'' (7) For a period of probation not to exceed six months before appointment or promotion is made complete, during which period a probationer may be discharged or reduced with the consent of the commission.

. '' (13) For discharge or reduction in rank or compensation after appointment or promotion is complete, only after the person to be discharged or reduced has been presented with the reasons for such discharge or reduction specifically stated, and has been allowed a reasonable time to reply thereto in writing. The reasons and the reply must be filed as a record with the commission.

'' (15) . . . The commission shall ascertain and record the comparative efficiency of employees in the classified service and shall have power, after hearing, to dismiss from the service those who fall below the standard of efficiency established.''

We have only mentioned above those subjects over which the Commission is authorized to prescribe rules and which are pertinent to this proceeding.

In pursuance of the power given it by said section 34 the Commission prescribed a set of rules. These rules, in so far as they are material to the question involved herein, provide for the holding of competitive examinations to test

the relative fitness of applicants for county positions in the classified service.

Rule V, sec. 1. "Whenever a vacancy in the classified service is to be filled, the appointing officer shall make requisition upon the civil service commission for certification of three names of persons eligible for the position. . . . "

Section 2. "Upon receipt of requisition for certification of names to fill a vacancy, the commission . . . shall certify to the appointing officer, from the register of eligibles appropriate for the group in which the position to be filled is classified, the three names at the head thereof, of persons eligible and willing to accept the place."

Section 5. "Appointment from original eligible lists shall be on probation for a specified period of not less than two months, nor more than six months. The appointing officer shall, when giving notice of appointment, state the length of the probationary period established by him for such appointment. Otherwise, the probationary period shall be six months. If, at the close of the designated probationary period, the conduct or capacity of the probationer has not been satisfactory, he shall be notified in writing by the appointing officer that he will not receive absolute appointment. Otherwise, his retention in the service shall be equivalent to a final and absolute appointment. The appointing officer shall not discharge or reduce the probationer to take effect before the expiration of the specified probationary period, without the consent of the commission."

Rule VII, sec. 4. "The commission shall ascertain and record the comparative efficiency of the employees in the classified service, and shall have the power, after hearing, to dismiss from the service those who fall below the standard of efficiency established."

Rule XI, sec. 1. "Discharge or reduction in rank or compensation after appointment or promotion is complete, of a person in the classified service, shall be made only after such person has been presented with the reasons for such discharge or reduction specifically stated, and has been allowed a reasonable time, to be stated in the communication setting forth said reasons, to reply thereto in writing. The statement of reasons and the reply must be filed as public records with the commission."

[2]  As to the power of the sheriff of Los Angeles
County, under the civil service provisions of the charter, to
appoint to positions in his office belonging to the classified
service (and this includes all deputies in his office, with the
exception of the under sheriff or chief deputy, and, there-
fore, the office of jailer is included therein), it is apparent,
from the provisions of the charter and the rules of the Civil
Service Commission above referred to, that this power is
still lodged in said officer, but with such limitations as are
prescribed by said charter and the rules of the Commission.
While before the adoption of the charter he had the absolute
power to appoint all deputies in his office and to fill their
positions with persons of his choice, after the adoption of
the charter, and under its provisions, he still has the right
to appoint all such deputies, but there are two limitations
placed upon this power of appointment.  These are: First,
all appointments to positions in the classified service must
be made from the list of three persons certified to him by the
Civil Service Commission, and, secondly, no appointment to
positions in the classified service shall be made because of
the religious or political opinions or affiliations of the ap-
pointee.

[3]  Having thus determined the power of the sheriff re-
garding appointment of his deputies, what, if any, changes
have been made by the charter regarding the power of this
officer to discharge such deputies and employees?  In his
brief, appellant says, ''It will be noted from the reading of
the sections relating to removal and discharge that nothing
is said by either the charter or the rules as to who is au-
thorized to make such discharge or removal.''  With this
concession on the part of appellant, it would hardly seem
necessary to further pursue the question as to the power by
the sheriff to discharge or remove any deputy or employee in
his office.  For, as we have already seen, the sheriff, prior
to the adoption of the charter, had the absolute right to
discharge and remove any deputy in his office, and according
to appellant's brief, as nothing is said in either the charter
or the rules of the Commission upon this subject it neces-
sarily follows that said officer still possesses the power vested
in him prior to the adoption of the charter.

We, however, feel that the concession made by appellant in his brief and quoted above is somewhat stronger against him than the facts really warrant. Section 34 of the charter provides that the Commission shall ascertain and keep a record of the efficiency of employees in the classified service and shall after hearing, have power to dismiss from service those who fall below the standard of efficiency established by the Commission. While the Commission is given power to dismiss employees in the classified service in this one instance, we fail to find in this regulation of the Commission any intention to divest the principal of his general power to remove and discharge deputies and employees whom he considers inefficient or out of harmony with his administration of his office. It may be in some instances, on account of friendship, or other reasons, the principal may desire to retain an inefficient deputy in his office. In such a case the Commission, under the rule last referred to, would have the right to remove such employee if he fell below the standard of efficiency, even against the will and without the consent of the principal. This rule or regulation would not in any way conflict with the provisions of law vesting in the principal a general power to discharge deputies and employees.

There is a further limitation in our opinion upon the absolute power of the principal to discharge deputies and employees, found in section 34 of the charter and in section 5, rule V, of the Commission. This rule provides, first, that all appointments shall be on probation, and, second, that during the probationary period the appointee shall not be discharged by the appointing officer without the consent of the Commission. In view of this rule and the provision of the charter authorizing its adoption by the Commission, it is argued by appellant, if it be held that the principal has the absolute right to discharge deputies under regular appointment, that the lot of the regular employee is more uncertain and precarious than that of a probationer. This may be true. There may have been some good reason in the minds of the framers of the charter for placing a check on the power of the principal to discharge a probationer before the expiration of his probationary period. Just what this reason was may or may not be apparent, but it is evident that the provisions of the charter providing for such

a rule and the rule itself only refer to appointments during the time the appointee is serving his probationary term, and cannot by any manner of construction known to us be extended so as to apply to deputies or employees serving under final and absolute appointment. The contention, therefore, of appellant that the power of discharge and removal is vested in the Civil Service Commission, or that the principal can only make such discharge or removal with the consent of said Commission, finds no support either in the provisions of the charter or in the rules prescribed by the Commission.

[4] As to appellant's contention that the sheriff, even if authorized to discharge him, can do so only after a hearing before the Civil Service Commission, he relies upon subdivision 13 of section 34 of the charter and the rule of the Commission, based upon said subdivision, which we have already quoted in full. This provision of the charter provides that a deputy in the classified list can only be discharged after he has been presented with the reasons for such discharge and has been allowed a reasonable time to reply thereto in writing. Appellant argues that as the charter here provides that no deputy can be discharged until written charges are preferred against him and an opportunity given him to reply thereto, it was contemplated by the framers of the charter that a hearing must be had by the Commission on said charges and reply before any discharge can be made. To so construe the charter would be to read something into it which was not placed therein by those who framed it. We find that in subdivision 15 of said section of the charter and in section 4 of rule VII, when the Commission seeks to dismiss an employee in the classified list, on account of his falling below the standard of efficiency established by the Commission, it can do so only after a hearing. It will thus be seen that the freeholders, in whom the law vested the sole power of framing the charter, had in mind at least one instance when they thought a hearing should be had, and that by design they provided for a hearing in that instance, and in another instance they made no such provision. For this court now to hold that a hearing should be had by the Commission before a principal could discharge a deputy when none had been provided for in the charter,

would be for this court to usurp the functions of the freeholders and to change their work in a material respect. This, it has neither the right nor the inclination to do. We must accept the charter as framed by the freeholders, and not attempt to enlarge its scope under the guise of judicial interpretation. Neither subdivision 13 of said section 34 of the charter nor rule XI, as prescribed by the Commission, provides for any hearing upon the charges preferred against a deputy before the principal may discharge him. All that is required by the charter and the rules of the Commission is that the officer discharging the deputy shall serve upon him, a reasonable time before his discharge, and file with the Commission, a statement of the reasons for the discharge. This procedure was observed by the sheriff of the county of Los Angeles in his discharge of appellant, and it follows, therefore, that said discharge was legal and effectual.

Great stress is laid by appellant upon the case of *Bannerman* v. *Boyle,* 160 Cal. 197 [116 Pac. 732], in support of his contention that he can only be removed after hearing before the Civil Service Commission upon the charges preferred against him by the sheriff and his reply thereto. In this action it was held that the attempted removal by the mayor of the city and county of San Francisco of a member of the board of education of said city and county during the term of office for which he had been regularly appointed, without any notice to him or any opportunity to make a defense, was void. The decision was based upon the rule supported by the great weight of authority that where an officer is appointed for a fixed term and it is provided that he may be removed during the term for cause, without other qualifying words, such removal cannot be made except after notice and a hearing. It is quite apparent that this case differs in two material respects from the case before us. In that case the officer was appointed for a fixed term of office and the charter provided that he could only be removed for cause. In the case before us, the appellant, as jailer, was not appointed for any fixed term and there is nothing in the charter of the county of Los Angeles providing that the principal might discharge him only for cause. Under these circumstances we do not consider the case of *Bannerman* v.

*Boyle* an authority which could be followed in the present action.

[5] Appellant suggests, however, that a construction of the civil service provisions of the charter of the county of Los Angeles that will permit the discharge of deputies and employees belonging to the classified service by the principal, without a hearing before the Civil Service Commission, will render the whole scheme of civil service, so far as it is made applicable to said county, a sham and a farce, and will utterly destroy the purposes of this wise and important part of the county charter. Assuming that appellant is correct in this criticism, we are unable to perceive how it can affect the determination of the question before us. It may be that a hearing by the Commission, before a principal can discharge a deputy, is most desirable. In fact, it may be absolutely essential to the proper and adequate functioning of the system of civil service as applied to employees in the county offices. Yet, if the freeholders, elected by the voters of said county, failed to provide for such a hearing, the courts are powerless to supply what they neglected to incorporate in the charter. We are, however, not entirely satisfied that appellant is correct in his conclusion that without such a provision in the charter, the attempt by the freeholders to enact adequate civil service regulations was futile and ineffectual. Under the law, as we have already seen, prior to the adoption of civil service, the principal in office had the absolute right to appoint and discharge all deputies and employees required in the conduct of his office. It was claimed that this power was greatly abused by the principal to the detriment of the public service and often resulted in the displacement of experienced and efficient persons, to make room for the personal and political friends of the appointing officer. To remove this condition, the legislation known as "civil service" was proposed, and its purpose was not so much to deprive the principal of the power vested in him to remove deputies, as it was to limit his power of appointment, and to provide that all appointments by him should be made from lists of names of persons furnished him by the Civil Service Commission, and who had satisfactorily passed the examination held by the Commission. With this restriction placed upon his power of appointment, the prin-

cipal was unable to select for his deputies, his personal and political friends. Deprived of this power to appoint his favorites, there was but slight excuse or temptation on his part to discharge efficient employees in his office for the reason that he must fill their places by men whose names appear on the list certified to him by the Commission. But his right to make such discharge has seldom been interfered with by civil service legislation. As head of the office and responsible for its successful administration he must have, and all civil service legislation has recognized this principle, the right to control his subordinates, even to the extent of removing them whenever in his judgment the public interest demanded their removal. His right to discharge, however, under civil service regulation is not absolute as it was under the old system. He cannot, as a rule, now discharge a person in the classified service on account of the latter's political or religious opinions or affiliation, and before he can discharge a person in this class he must present such person with the reason for his discharge and give him a reasonable time to reply thereto. Both the reasons for the discharge and the reply of the employee must be in writing and filed as public records in the office of the Commission.

At the oral argument of this case counsel for respondent cited a number of excerpts from reports of civil service organizations, addresses by advocates of civil service reform, and standard works upon the principles of civil service legislation as indicating that the provisions of the charter of the county of Los Angeles are in harmony with the well-established and well-recognized principles of civil service. We will refer to only one of these citations, and that from Proctor on Principles of Public Personnel Administration, which is in the following language:

"Few civil service commissions, however, have the power of deciding cases of dismissal. In perhaps 80 per cent of the civil service jurisdictions throughout the country, administrative officers have the power to remove their subordinate employees, either absolutely or subject to certain restrictions. The appointing officer should have the power to remove, suspend, or lay off his subordinates. If he does not have this power, it is difficult to see how he can enforce discipline and maintain a high standard of efficiency in the

organization for which he is responsible. At the same time an administrative officer in making removals should be subject to definite restrictions. Civil service laws commonly provide that he shall not remove public employees because of religious or political affiliations, but only for *bona fide* reasons of misconduct or incompetency. In order to make effective this provision, the administrative officer should be required to furnish the employee whom he wishes to remove, a written statement of the reasons for his action, and to give the employee an opportunity to reply in writing. He should also be required to file with the Civil Service Commission a copy of the reasons for his action and a copy of the reply of the employee. Experience shows that where the civil service system is once well established, administrative officers do not ordinarily abuse the power of removal. The motive for making an unjust removal would be in most cases the desire to put in the place of the employee removed a person more acceptable on political or similar grounds. But an administrative officer has little incentive for making an unjust removal if entrance to the civil service is safeguarded by a careful enforcement of the merit principle.''

The supreme court of this state has, in the case of *Cahen* v. *Wells*, 132 Cal. 447 [64 Pac. 699], expressed its views upon the subject in similar language. On page 452 [64 Pac. 701] the court says: ''Since the head of an office could not, under the merit system, fill a vacancy with a person of his own choice, but must do so with the person, or one of the two or three persons, certified by the Commission, the incentive to make removals, except for actual incompetency, would be very slight. One of the reformers quoted in the brief, after pointing out that removals are rarely asked for except to make a vacancy for a particular man, says, 'Under the merit system of appointment, the question of removals would be solved without legislation.' ''

It is apparent, therefore, from these quotations, and many more of the same general character could be cited if deemed necessary, that the provisions of the charter of the county of Los Angeles, providing for civil service regulation of certain of its employees, are in harmony with the general principles of civil service legislation as understood and explained

by writers upon the subject of unquestioned authority, as well as by our own supreme court.

In accordance with the views hereinbefore expressed, we are of the opinion that the judgment should be affirmed, and it is so ordered.

Conrey, P. J., and Houser, J., concurred.