[L. A. No. 19276. In Bank. June 29, 1945.]

OTTO A. STEEN, Petitioner, v. BOARD OF CIVIL SERVICE COMMISSIONERS et al., Respondents.

George E. Cryer and R. Alston Jones for Petitioner.

Ray L. Chesebro, City Attorney, and A. L. Lawson and George William Adams, Deputies City Attorney, for Respondents.

CARTER, J.—According to petitioner's petition for a writ of mandate in the court below, he had been an employee of respondent Department of Water and Power, hereinafter referred to as department, of respondent city of Los Angeles since 1922. He had attained civil service status pursuant to the charter of the city. On August 12, 1943, there was served upon him a notice of suspension from his position. On August 16, 1943, he filed with the city's Board of Civil Service Commissioners, hereinafter referred to as board, a "written application for an investigation by said board of the grounds for his said *suspension;* . . ." On August 17, 1943, there was served on petitioner and filed with the board a "Notice of Removal, Discharge or Suspension" signed by an official of the department, advising him that he was discharged as of

that date for the causes set forth therein. On August 18, 1943, he filed with the board the following:

"To the Honorable the Board of Civil Service Commissioners, . . .

"Re Notice of Removal, discharge or suspension dated August 17, 1943.

"Please be advised that I am an employee in the Water and Power Department and desire to appeal to your Honorable Body for relief from my discharge on Aug. 17, 1943; and further I respectfully request that your honorable body investigate the grounds for such discharge. I am prepared at your convenience to offer evidence, both oral and documentary to controvert the matter as set forth in the notice of discharge.

"Awaiting your pleasure in the matter, I am

"Yours truly,
"Otto A. Steen."

The department did not produce before the board any proof of its grounds for discharge; the board delegated to the manager of the civil service department the duty to investigate the charges and his report was filed with the board on December 5, 1943. On December 10, 1943, petitioner was notified that on December 14, 1943, the board would consider the heretofore quoted request of petitioner. He appeared before the board on December 14, 1943, proceedings were had and on the next day the board issued an order sustaining the discharge of petitioner by the department. On February 25, 1944, petitioner filed with the board a demand in writing that he be reinstated and with the city clerk a claim for compensation accruing during the period of the alleged wrongful discharge. Although no motion was made by respondents, the court made a minute order denying the petition for an alternative writ of mandate without prejudice, apparently proceeding under section 1107 of the Code of Civil Procedure providing for the service of an application for the writ and permitting the respondent to file points and authorities in opposition to its issuance. From the memorandum opinion of the court it is manifest that it denied the petition on the sole ground that petitioner had failed to file a demand for reinstatement within 90 days from the time he was first notified of his discharge.

The charter provisions bearing on that issue are as follows:

"Any board . . . having the power of appointment . . . shall have the power to remove, discharge or suspend any . . . employee of such department; but no person in the classified civil service of the city, . . . shall be removed, discharged or suspended except for cause, which shall be stated in writing by the board . . . and filed with the Board of Civil Service Commissioners, with certification that a copy of such statement has been served upon the person so removed, discharged or suspended, . . . *Upon such filing such removal, discharge or suspension shall take effect.* Within fifteen days after such statement shall have been filed, the said board, upon its own motion, may, or upon written application of the person so removed, discharged or suspended, filed with said board within five days after service upon him of such statement, shall proceed to investigate the grounds for such removal, discharge or suspension. If after such investigation said board finds, in writing, that the grounds stated for such removal, discharge or suspension were insufficient or were not sustained, and also finds in writing that the person removed, discharged or suspended is a fit and suitable person to fill the position from which he was removed, discharged or suspended, said board shall order said person so removed, discharged or suspended to be reinstated or restored to duty. The order of said board with respect to such removal, discharge or suspension shall be . . . final and conclusive; . . ." (Emphasis added.) (Los Angeles Charter, § 112(a).)

"Whenever it is *claimed by any person that he has been unlawfully* suspended, laid off or *discharged,* and that such lay-off, suspension or discharge is ineffective for any reason, any claim for compensation must be made and a demand for reinstatement must be presented in writing within ninety days following *the date on which it is claimed that such person was first illegally, wrongfully or invalidly* laid off, suspended or *discharged.* Such demand for reinstatement must be filed with the Board of Civil Service Commissioners and such claim for compensation for such allegedly wrongful, illegal or erroneous discharge must be filed with the City Clerk. Failure to file such demand for reinstatement within the time herein specified shall be a bar to any action to compel such reinstatement and proof of filing such a demand for reinstatement must be completed and proved a condition precedent to the maintenance of any action for reinstatement. Proof of filing the claim for compensation within the time

and in the manner herein specified shall be a condition precedent to any recovery of wages or salary claimed to be due on account of said layoff, suspension or discharge.'' (Emphasis added.) (Los Angeles Charter, § 112½.)

■ Respondents contend that the demand for reinstatement must be filed within 90 days from the date of the filing of the notice of discharge with the board by reason of the italicized sentence in section 112(a), and hence the demand filed within 90 days after the board's order sustaining the departmental discharge was too late.

The only reasonable interpretation of the foregoing provisions of the charter is that the written demand must be filed as required by section 112½ within 90 days after the order of the board sustaining the action of the department. Section 112a establishes an orderly procedure by which action of the department in filing the notice of discharge shall be examined. It may be likened to an administrative or quasi judicial proceeding leading to the final discharge of a civil service employee. Although the department is given the power to discharge, it may only do so for cause. The grounds of the discharge must be set forth in its notice of discharge which must be both filed with the board and served upon the employee affected; thus indicating that the department's action is not to be deemed final, but rather as a preliminary step in a series. It is true the section states that upon the filing of the notice the discharge shall take effect, but, rather than implying finality to the action, that provision means in effect that the employee shall be required to cease working in his position and that the department need not accept his services pending the ultimate disposition of the matter, thus establishing the policy of relieving the department from the detrimental aspects of having, in the interim, actively working on its staff, an employee considered unsatisfactory. Following the filing and service of the notice there are administrative remedies which may be pursued by the employee. Thus, within fifteen days the board may, on its own motion, or on the employee's application, made within five days, ''investigate the grounds'' for the discharge. If the board finds that the grounds for the discharge are insufficient and that the employee is fit and suitable, it may reinstate him. Although no express provision is made therefor, we believe it follows by necessary implication that the board may, as it did in the instant case, make an order sustaining the discharge. Presumably if the board did not act on its own motion within the

fifteen days, or if no application for relief were filed by the employee within the time specified, the discharge would become final and effective at the expiration of such time. The proceedings before the board are in the nature of administrative remedies or process which are a part of the ultimate discharge. If the employee fails to pursue those remedies the court will not listen to his plea for reinstatement inasmuch as he would not have exhausted his administrative remedy (see *Alexander* v. *State Personnel Board,* 22 Cal.2d 198 [137 P.2d 433]; *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715]), thus further indicating that the procedure before the board is a part of the entire scheme for the discharge of civil service employees. That thought is further evinced by the final statement in section 112(a) that the action of the board is final and conclusive. One phase of the finality would be that the discharge proceedings had been completed and were effective for all purposes when the board made its order. With such a complete procedure for determining matters of discharge, no useful purpose could be served by the demand for reinstatement required by section 112½ before the board had an opportunity to follow the fixed procedure for determining the very issue of reinstatement as well as whether the grounds for the discharge were sufficient. The demand would accomplish no purpose inasmuch as the entire issue was then before the board. Generally a demand is not a prerequisite where it would be futile or an idle gesture. (See 16 Cal.Jur. 772-3.)

Turning to section 112½ we find ample confirmation for the foregoing views. It refers to an employee claiming that he has been wrongfully discharged. As we have seen, any claim of the employee for relief when the department first files its notice of discharge, is made to the board pursuant to the procedure set forth in section 112(a) and the discharge is not a finality until that procedure is followed. Then comes the requirement of 90 days, which runs from the date that "it is claimed" that the employee was first wrongfully discharged, that is, under the circumstances in the instant case that the board made its order. The section makes no provision for action, affirmative or negative, on the part of the board, in response to the employee's demand. That is natural as to the time elapsing while proceedings under section 112(a) are pending, inasmuch as the procedure in that respect is set forth in section 112(a). The section (112½) then reads that the

filing of the demand is a condition precedent to bringing an action for reinstatement. Read as a whole it is concerned with fixing a time limit and formalities necessary as a basis for court action, presupposing that the procedure before the board has been followed. The demand may be somewhat analogous to the requirement of a petition for a rehearing addressed to the board. The board is given an additional opportunity to pass upon the issue before resort is had to the courts. While section 112(a) speaks of discharge in the past tense and of reinstatement of the employee after investigation, we believe the intent was to relate those thoughts to the proceeding before the board and that the reinstatement was to the roll as an active worker, that is, the temporary removal from that category would be nullified. On the other hand when it comes to seeking court relief, the demand for reinstatement is from the final action of the board perfecting a final discharge. The preliminary step for action by the board was an application by the employee rather than the demand required in section 112½. The latter was preliminary to seeking judicial relief.

Respondents rely upon *Campbell* v. *City of Los Angeles*, 47 Cal.App.2d 310 [117 P.2d 901]. No petition for a hearing in this court was filed in that case and it did not discuss the factors hereinabove mentioned. It is disapproved.

Respondents take the position that under section 112(a) a formal hearing by the board is not necessary. In interpreting that section it should be kept in mind that "The purpose of civil service is twofold—to abolish the so-called spoils system, and to increase the efficiency of the service by assuring the employees of continuance in office regardless of what party may then be in power. Efficiency is secured by the knowledge on the part of the employee that promotion to higher positions when vacancies occur will be the reward of faithful and honest service" (*Allen* v. *McKinley*, 18 Cal.2d 697, 705 [117 P.2d 342]), and that in ascertaining legislative intent the purpose sought to be achieved by a statute is a significant factor in its interpretation. (*People* v. *Moroney*, 24 Cal.2d 638 [150 P.2d 888]; *Gage* v. *Jordan*, 23 Cal.2d 794 [147 P.2d 387]; *City & County of San Francisco* v. *San Mateo County*, 17 Cal.2d 814 [112 P.2d 595]; *California Drive-in Restaurant Assn.* v. *Clark*, 22 Cal.2d 287 [140 P.2d 657, 147 A.L.R. 1028].) Thus, in the instant case the goal of civil service, assurance of continuity in the position, should not be thwarted by leaving the employee without remedy for a full

consideration of the propriety of his discharge, unless the statute unquestionably requires such a result.

 The rule is firmly established that if by statute an officer or civil service employee may not be removed or discharged except for cause, the clear implication is that there be afforded an opportunity for a full hearing to accomplish his removal; that unless the statute expressly negatives the necessity of a hearing, common fairness and justice compel the inclusion of such a requirement by implication. (See *Bannerman* v. *Boyle,* 160 Cal. 197 [116 P. 732]; *Carroll* v. *California Horse Racing Board,* 16 Cal.2d 164 [105 P.2d 110]; *Welch* v. *Ware,* 161 Cal. 641 [119 P. 1080]; *Knights of Ku Klux Klan* v. *Francis,* 79 Cal.App. 383 [249 P. 539]; *People* v. *Bailey,* 30 Cal.App. 581 [158 P. 1036]; *Scott* v. *Donahue,* 93 Cal.App. 126 [269 P. 455]; *Abrams* v. *Daugherty,* 60 Cal. App. 297 [212 P. 942]; *Boyd* v. *Pendegast,* 57 Cal.App. 504 [207 P. 713]; 99 A.L.R. 336.) Thus it is clear that the charter, by prohibiting removal except for cause, impliedly requires a hearing. There is nothing in the charter which negatives that implication. True, it is provided in section 112(a) that the board shall *investigate* the grounds for discharge. But an investigation is not necessarily inconsistent with a hearing. It may mean the same thing. (See *Luellen* v. *City of Aberdeen,* 20 Wn.2d 594 [148 P.2d 849]; *Application of Gilchrist,* 130 Misc. 456 [224 N.Y.S. 210].) And in the instant case there are numerous other factors which when taken together indicate that a hearing was intended. The grounds for the discharge must be stated in writing and served upon the employee and filed with the board. A time limit is specified within which the employee must apply to the board for relief. The board must find in writing whether or not the grounds for the discharge are sufficient, thus implying an examination and weighing of evidence. The board makes a determination —an order. The secretary of the board is empowered to administer oaths "in matters pertaining to the work of the board." (Los Angeles Charter, § 116.) Returning to the use of the word investigate, it may be further observed that even if it implies an independent inquiry by the board outside and in addition to a formal hearing, yet there is no express intent to dispense with a hearing. A recent case (1944) in the Supreme Court of Washington expresses, we believe, views which are consonant with logic and the principles un-

derlying civil service. In *Luellen* v. *City of Aberdeen,* 20 Wn.2d 594 [148 P.2d 849], the ordinance provided that the employee could not be discharged by the appointing power unless the latter filed his reasons with the civil service board whereupon the employee may demand an "investigation" and the commission must make it. The commission was expressly given authority to subpoena witnesses and administer oaths, powers which are incidental to holding a hearing. Nothing was said in the ordinance about a hearing. The court held:

"While the ordinance provides for an investigation, it does not provide that any hearing, as a part thereof, shall be accorded the police officer or that he shall have any notice of the investigation or any opportunity to be heard in his own behalf. It is silent on these subjects.

"The ordinance contemplates that a police officer in classified civil service shall be removed for cause only; otherwise, there would be no occasion for the requirement that reasons therefor be given in writing to the commission and an investigation made by it. Where such is the case, the rule is that the accused officer is entitled to a hearing on the charges made against him after reasonable notice thereof has been given. . . .

"Unless the governing statute or ordinance expressly excludes notice and hearing, both are implied, and this is particularly true when the statute or ordinance provides for an investigation and vests a commission with the power to administer oaths, summon witnesses, and produce evidence. . . . The net result is that, in cases of tenure under civil service, where the officer shall hold office until removed or retired, it is implied that he can be removed for cause only and then only after due notice and hearing or opportunity given to be heard."

In *Boyd* v. *Pendegast, supra,* the court had before it a provision of the Los Angeles City Charter practically identical in wording with section 112(a) and in considering a discharge of a police officer thereunder stated:

"However, it seems clear that it is contemplated that a police officer ordered to be suspended or removed *shall be accorded a hearing before the commissioners if he applies for it within five days after the chief of police has given him notice of the order.* The provision does not in terms require that there be stated in the notice of the chief of police a description of the acts which make up the delinquency charged against the officer, although it will be presumed that, if an investigation is had, the commissioners will, upon request of the officer,

acquaint him with such details. The manner in which the investigation is to be conducted and the class of evidence to be heard is left with the commission. It is imperative only that a hearing be accorded the officer upon his request, and that he be permitted to produce his evidence. The commission acts in a *quasi*-judicial way (*Speed* v. *Common Council,* 98 Mich. 360 [39 Am.St.Rep. 555, 22 L.R.A. 842, 57 N.W. 407]), and may be required by appropriate writ to accord a hearing to the person affected by a removal order.'' In expressing the thought that the board had unlimited discretion as to the nature of the hearing, we believe the court there went too far. The term investigation does not detract from the fact that a hearing is required with all that the term implies. *Cronin* v. *Civil Service Com.,* 71 Cal.App. 633 [236 P. 339], should not be considered as contrary to these views. There the charter did not limit a discharge to instances where there was cause. The case of *Krohn* v. *Board of Water & Power Commrs.,* 95 Cal.App. 289 [272 P. 757], in expressing the view that no hearing was necessary under the charter provision here involved must be disapproved inasmuch as it is out of harmony with principles heretofore enunciated and authorities cited.

On the issue of whether petitioner was afforded an opportunity for a hearing he alleges in his petition that the board did not investigate the charges against him and did not ''accord to petitioner a hearing or an opportunity to appear with counsel, or to produce evidence in his defense, or to be confronted by the witnesses against him; that respondent board examined no witnesses, received no evidence, and made no findings either in writing or otherwise in said matter; that on the contrary . . . respondents referred said appeal of petitioner and delegated the making of an 'investigation' and 'report' thereon to the manager of said civil service department; that on said last mentioned date said manager referred said appeal and delegated the making of an investigation and report thereon to Esther Reimers, an employee of said civil service department; . . .''; ''That respondent Board of Water and Power Commissioners did not either within fifteen days after it filed with respondent Board of Civil Service Commissioners its statement of charges against petitioner, or at any other time, produce before said Civil Service Commission any proof whatever of its said charges against petitioner, and said Board of Water and Power Commissioners has never proven or established said charges or any of them; . . .''

He goes on to allege, however, that Reimers "consulted many individuals and collected and compiled a mass of hearsay, rumor, and report concerning petitioner's record as an employee in said department . . . and . . . filed with respondent commission said compilation of unsworn matter as her report in said investigation; that said report of said Esther Reimers, and all matter therein contained, was unsigned, unsworn, and wholly without verification; . . .

"That thereafter . . . the manager of said civil service department notified petitioner that on December 14, 1943 at 2:30 P. M. respondent board would consider petitioner's discharge from his position of rigger and requested that petitioner 'be present, if possible, when the case is considered'; that petitioner asked that he be permitted to have counsel with him when his case was considered but was informed that counsel would be of no benefit to him, that the commission would not hold a hearing and would not listen to petitioner's counsel; . . .

"That on presenting himself on December 14 at 2:30 P. M. petitioner was confronted by respondent board and its attorney, by his three accusers from the Department of Water and Power, and by a deputy city attorney representing the last named department; that thereupon petitioner was asked by the president of respondent board if he had anything to say; that respondent was so overcome emotionally by the sudden and unexpected confrontation in force by his accusers, that he was unable to defend himself or to say anything in his defense; that thereupon after oral elaboration by his accusers of the charges against petitioner, it was moved by commissioner Woellner, and seconded 'that from the *information* presented by both the report and the questioning by the commission of those present, the commission find that the causes for the discharge of Mr. Steen, as set forth above are sufficient and are sustained, and therefore his appeal is denied.' . . .

"That in all that it did in the matter of the discharge of petitioner, in denying petitioner's appeal, and sustaining the charges against him, respondent board acted wholly without evidence and wholly upon hearsay, and entirely in excess of its jurisdiction, *as abundantly appears from the records and files of respondent board; . . .*"

It is clear that the petition states a cause of action. The general rule is that in the absence of a special statute an ad-

ministrative agency cannot over objection make findings of fact supported solely by hearsay evidence. (See *Consolidated Edison Co.* v. *National Labor Relations Bd.*, 305 U.S. 197 [59 S.Ct. 206, 83 L.Ed. 126]; *Walker* v. *City of San Gabriel*, 20 Cal.2d 879 [129 P.2d 349, 142 A.L.R. 1383]; *Dyment* v. *Board of Medical Examiners*, 93 Cal.App. 65 [268 P. 1073].) Here the board effectually denied petitioner the opportunity of making an objection by arbitrarily refusing to allow petitioner's counsel to participate in the proceeding. This was a denial of a hearing. (*Powell* v. *Alabama*, 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527]; *Luellen* v. *City of Aberdeen, supra; Wisconsin Telephone Co.* v. *Public Service Commission*, 232 Wis. 274 [287 N.W. 122, 133, 593]; *Roberts* v. *Anderson*, 66 F.2d 874.)

█ Finally, respondents urge that no appeal lies from the minute order denying without prejudice the application for the alternative writ. On the score of the lack of entry of a formal judgment or order upon the minute order, the Rules on Appeal provide that the date of entry of an order which is entered on the minutes shall be the date of its entry thereon unless the minutes expressly direct the preparation and filing of a written order. (Rules on Appeal, rule 2(b)(2); see, also, *Brown* v. *Superior Court*, 70 Cal.App. 732 [234 P. 409]; *Colthurst* v. *Justice's Court*, 100 Cal.App. 146 [279 P. 812].) Hence, the minute order was an order and no further order was contemplated. In *Brown* v. *Superior Court, supra*, in proceedings for certiorari no demurrer or answer was filed and when the order to show cause was heard a minute order was made denying the writ. It was held that a final appealable judgment had been entered. In the instant case, as before stated, the procedure set forth in section 1107 of the Code of Civil Procedure was followed, under which a copy of the petition for the writ is served on the respondent before an alternative writ is issued and the respondent may file points and authorities in opposition to it. The court then made its minute order denying the petition. Its action was final insofar as appeal was concerned. No further order was contemplated. The case of *Ross* v. *O'Brien*, 1 Cal.App.2d 496, 498 [36 P.2d 1108], was decided prior to the addition of section 1107 to the Code of Civil Procedure and is not controlling. The court there discussed an appeal from an order sustaining a demurrer to the petition and denying the petition. On the latter score the court spoke of it as not meeting the require-

ments of a judgment of dismissal. However, under section 1107 it is clearly contemplated that there may be a simple order of denial when the application for the alternative writ is heard on notice. It is neither a ruling on a demurrer nor a dismissal. It is a simple denial of a petition and a final order.

The use of the words "without prejudice" following the denial mean little. Under the present circumstances it could mean nothing more than an expression by the court that petitioner could commence a new proceeding. Whether he is required to do that depends upon the correctness of the order of denial which we have determined on this appeal.

The judgment is reversed.

Gibson, C. J., Traynor, J., and Schauer, J., concurred.

SHENK, J., Dissenting.—The majority opinion changes a long standing interpretation of the Los Angeles City Charter provisions. In effect it amends the charter in two very substantial respects without a vote of the people. It expressly disapproves decisions in this state which have been followed by the administrative bodies of the city without any change in the charter in the interim.

Section 112½ of the charter provides that a claim for compensation and demand for reinstatement must be filed within ninety days following the date on which it is claimed that the employee was "first illegally, wrongfully or invalidly laid off, suspended or discharged." Under the charter the suspension or discharge is effective immediately upon notice thereof given by the employing board. The claim of the discharged employee has matured at that time and it is complete whether or not he has applied for an investigation by the commission. The discharge is not suspended pending action on his request for investigation. The case of *Campbell* v. *City of Los Angeles,* 47 Cal.App.2d 310 [117 P.2d 901], applied the language of the charter in conformity with its plain meaning. The contention in that case was that the demand for investigation under section 112a might be a substitute for the requirement of section 112½. The court pointed out the respective objectives of sections 112a and 112½, the former as a procedure by which the board might on its own investigation reinstate the employee or the employee might request an investigation; the latter as the only authority pursuant to which the employee could prosecute his "demand for reinstatement," and that the

period of limitation commenced when the charter said it did, namely, from the date when the employee was discharged by the employing board.

The provisions of section 112a of the charter, which have been construed by the majority as requiring a hearing in the nature of a formal judicial trial, are that upon written application of the discharged civil service employee the board ''shall proceed to investigate the grounds for such removal, discharge or suspension. If after such investigation said board finds, in writing, that the grounds stated for such removal, discharge or suspension were insufficient or were not sustained, and also finds in writing that the person removed, discharged or suspended is a fit and suitable person to fill the position from which he was removed, discharged or suspended, said board shall order said person so removed, discharged or suspended to be reinstated or restored to duty. The order . . . shall be . . . final and conclusive; . . .''

In the case of *Krohn* v. *Board of Water & Power Commrs.*, 95 Cal.App. 289 [272 P. 757], decided in December, 1928, the court traced the history of the provisions concerning the rights and duties of a discharged employee, culminating in the adoption of the provisions of section 112a of the present charter. In that case a request for an investigation was filed. Without a hearing and after an examination of the investigator's report the board of Civil Service Commissioners made its order that the discharge was not sustained and that the employee be restored to duty. The employing board, the Board of Water and Power Commissioners of the City of Los Angeles, refused to comply with the order and the employee sought a writ of mandate in the superior court. It was therefore the Board of Water and Power Commissioners, on its appeal from the judgment directing it to reinstate the employee, which contended that pursuant to the provisions of section 112a the Board of Civil Service Commissioners had no jurisdiction to order the employee's reinstatement without a trial or hearing. The same argument was made in that case as in this, that the word ''investigate'' is identical in meaning or significance with the words ''hearing'' or ''trial''; but the court, after reviewing the history of the charter provisions arrived at a construction opposed to that declared by the majority in this case. The court pointed out that it was not until 1903 (Stats. 1903, p. 555) that legislation was enacted providing a remedy for alleged wrongful discharge of employees of the

city. Section 242 of the charter was then adopted providing that no employee should be discharged ''except for cause upon written charges, and after an opportunity to be heard in his own defense'' in a public investigation. The commission was given power to administer oaths and secure by subpoena the attendance and testimony of witnesses and the production of books and papers. In 1905 (Stats. 1905, pp. 980, 992) the provision vesting power in the commission to administer oaths and secure attendance of witnesses and production of records by subpoena was deleted. The requirement for a public hearing on written charges remained intact until 1911, when section 241 (Stats. 1911, pp. 2051, 2116) was amended to omit the provision for discharge only ''for cause upon written charges, and after opportunity to be heard in his own defense'' and for a public investigation. That amendment substituted a provision that no employee may be discharged ''except for cause,'' and that the commission may on its own motion or on the employee's request should investigate the grounds for removal. The court noted that all of the words connoting a trial or hearing or investigation of any public nature were eliminated by the amendments, and that a change in the requirements must thereby have been intended. It said: ''It is therefore evident that the difference between the procedure and powers skeletonized by the provisions of the 1903 charter, and that of the present charter, is radical and significant,'' and that the difference pointed distinctly to an intention on the part of the people of the city and of the Legislature to abandon the former requirement of a trial in the nature of a judicial hearing and to substitute an ''investigation'' on the application of the discharged employee. The court followed time-honored decisions of other jurisdictions wherein it had been held that similar language did not contemplate a public hearing or trial. The administrative bodies of the city of Los Angeles have followed and its civil service employees have been governed by the law as thus laid down for almost seventeen years. The case of *Cronin* v. *Civil Service Com.*, 71 Cal.App. 633 [236 P. 339], distinguished by the majority, was in harmony with the Krohn case in that the court declined to read into the charter something that was not placed there by the framers.

There is no reason why a different construction of the charter provisions should be made when a discharged employee is the one aggrieved by the order of the commission. If it

be conceded, in accord with the declarations of the court in *Boyd* v. *Pendegast,* 57 Cal.App. 504 [207 P. 713], that the employee is entitled to be heard if he request an investigation, he is entitled to no more than an opportunity to produce his evidence. As pointed out in that case anything more than that is within the discretion of the board. By the allegations of the petition in the present case it appears that the commission afforded to the petitioner that opportunity, and that he produced no evidence nor made any statement in his own behalf. The petitioner does not question that the charges upon which his discharge was grounded were sufficient to constitute cause for discharge.

The statement in the majority opinion that the board "must find in writing *whether or not* the grounds for the discharge are sufficient," inserts in the charter a requirement that is not there and that was apparently *ex industria* excluded. It is only when there is a restoration to duty that findings are required.

The rights of the civil service employees are such as are provided by the charter of the city. No constitutional rights are infringed by the method there provided for their suspension or discharge. Their primary duty is to serve the municipality faithfully. Proper discipline among the employees of the city is necessarily implied and no proprietary rights are involved. (*In re Carter,* 141 Cal. 316, 320 [74 P. 997]; *French* v. *Senate of Cal.,* 146 Cal. 604 [80 P. 1031, 2 Ann.Cas. 756, 69 L.R.A. 556]; *Cline* v. *Superior Court,* 184 Cal. 331 [193 P. 929]; *Garvin* v. *Chambers,* 195 Cal. 212 [232 P. 696]; *Good* v. *Common Council,* 5 Cal.App. 265 [90 P. 44]; *Boyd* v. *Pendegast, supra; Ludolph* v. *Board of Police Commissioners,* 30 Cal.App.2d 211, 216 [86 P.2d 118].)

If the people of the city of Los Angeles desire a change in the law governing the rights and remedies of its civil service employees, that change should come through legislative processes. The allegations in the petition in my opinion show a compliance with the present charter provisions, and the judgment of the trial court should be affirmed.

Edmonds, J., and Spence, J., concurred.

Respondent's petition for a rehearing was denied July 26, 1945. Shenk, J., Edmonds, J., and Spence, J., voted for a rehearing.