[Civ. No. 15270.   First Dist., Div. One.   Nov. 24, 1952.]

JOSEPH P. DOYLE, Appellant, v. ROSS MILLER, Individually and as City Manager, etc., et al., Respondents.

Richard F. McCarthy for Appellant.

Fred C. Hutchinson, City Attorney (Berkeley), and Robert T. Anderson, Assistant City Attorney, for Respondents.

WOOD (Fred B.), J.—Plaintiff was a captain with permanent civil service status in the fire department of the city of Berkeley. June 14, 1949, he was dismissed by the city manager without a hearing and was given written notice of dismissal.

He petitioned for a writ of mandamus claiming that he was entitled to a hearing prior to dismissal and that the notice of dismissal did not adequately state the reasons for the dismissal. He asked for reinstatement as of March 15, 1949, with accrued and accruing salary, retirement and other rights and benefits, and an opportunity to be heard in his own defense. The trial court found against plaintiff upon all issues and rendered judgment dismissing his petition and denying him any relief.

██ (1) *The asserted right to a hearing prior to dismissal* depends primarily upon the applicability of a fire department regulation adopted by the fire chief and approved by the city manager under authority of an ordinance organizing and creating the several departments and bureaus of the city.* A separate ordinance and regulations adopted in furtherance of its provisions dealt with appointments, promotions, demotions and dismissals in the city civil service and did not provide for a hearing prior to dismissal.

To determine which set of regulations governs, we turn first to the city charter. Adopted in 1909 (Stats. 1909, Res. ch. 17, p. 1208), the charter was amended in 1921 to provide that the "City of Berkeley shall have the right and power to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this Charter . . ." (Stats. 1921, Res. ch. 16, p. 2021, § 115, p. 2023.) In this manner, the city took advantage of the home rule amendment of 1914 to section 6 of article XI of the state Constitution. (See *West Coast Advertising Co.* v. *San Francisco,* 14 Cal.2d 516, 521 [95 P.2d 138].)

What limitations relevant to our inquiry does the charter impose? First, the charter vests the power of dismissal in the city manager. "He shall have the power, and it shall be his duty: . . . (b) Except as otherwise provided in this charter to appoint, discipline or remove all heads or directors of departments, chief officials and all subordinate officers and employees of the City, subject to the Civil Service provisions of this Charter. . . ." (Berkeley Charter, § 28; Stats. 1923, Res. ch. 20, p. 1537, at 1543.) The charter does not "otherwise provide" concerning the appointment, discipline or removal of any officer or employee in the fire department of the city. The charter contains a significant provision concerning civil service regulations: "Sec. 49. As the legislative organ of the city, the council, subject to the provisions and

---

*That ordinance authorized the adoption of rules and regulations "for the administration, discipline, equipment and uniforms of members and officers" of the fire department.

The regulation declared every member or employee of the fire department subject to "reprimand, suspension, reduction in rank, deduction of pay or dismissal . . . for any of the following causes . . . after having been given an opportunity to be heard in his own defense."

The ordinance, in delegating the rule-making power in respect to "discipline," may or may not have embraced "dismissal" and "reduction in rank," a question which need not be decided in view of our conclusion that the fire department regulation is inapplicable.

restrictions of this charter, shall have power: . . . (56) To establish a bureau of civil service and to appoint a commission, to serve without compensation, to administer the same under rules and regulations to be made by the council . . .'' (Stats. 1909, Res. ch. 17, p. 1208 at 1232 and 1240.)

This means that the city manager had a direct grant of power from the charter to dismiss the plaintiff from his position as fire captain, without cause, notice, or hearing except as limited by ordinance, rule, or regulation *adopted by the city council.* This renders inapplicable and unavailable to plaintiff the hearing requirement of the fire department regulation *adopted by the fire chief with the approval of the city manager.*

The ordinance pertaining to the civil service (No. 2342-N.S.) contains a clear expression of the city council's intent that that ordinance and rules and regulations established under it shall apply to dismissals from the city civil service. Section 4 of the ordinance declares: ''Pursuant to the provisions of Section 28 of Article VII of the Charter of the City of Berkeley and in accordance with the provisions of this ordinance and the rules established hereunder, the City Manager shall retain power to make transfers, promotions, demotions, reinstatements, lay-offs, and to suspend or dismiss employees, subject to the provisions of this ordinance and the rules established hereunder . . .'' Other provisions of this ordinance create a personnel board, define the general powers of the board, and prescribe certain requirements concerning notices and hearings. Section 12 provides that the tenure of every employee holding a position shall be during good behavior and proved fitness, ''but any officer or employee may be removed or otherwise disciplined as provided by this ordinance and the rules established hereunder.'' It then declares that ''Any employee in the competitive service who has been demoted, suspended, dismissed or reduced in pay, shall be entitled to receive a written statement of the reasons for such action within three days, and he shall have three days' time thereafter within which to answer in writing thereto. Copies of such charges and answer shall be filed with the Chairman of the Personnel Board and the City Manager. Within ten days from the date of filing his answer to the written charges, or in the event such written charges have not been made available to him within the time prescribed, then within ten days after the action taken to demote, dismiss, or reduce the pay of the employee, he may

file a written demand with the Chairman of the Personnel Board requesting a hearing before the Board. The Board shall then investigate the case and conduct a hearing as provided by Section 13 of this ordinance and by the rules established hereunder.'' Section 13 gives the personnel board the right to investigate any complaint made by an employee relative to any situation affecting his employment status, the procedure for the hearing of the complaint to be set forth in the rules, the hearing to be public, and ''the findings and recommendations to the City Manager of the Personnel Board'' to be a matter of public record. Section 13 concludes: ''Neither the action of the Personnel Board nor any subsequent action taken by the City Manager on the recommendations of the Board shall be reviewable in any court. The action of the City Manager on the recommendation of the Personnel Board shall be final and conclusive.''

The ordinance gave plaintiff, at most, a hearing by the board only after discharge by the manager, with power in the board only to make recommendations to the manager, not to reverse or modify his decision. Plaintiff has been offered a hearing after his dismissal as provided by this ordinance but has refused it, claiming a right to reinstatement and back salary.

The personnel rules make no change in this respect. Section 2 of rule XV declares that a civil servant ''may be discharged at any time by the City Manager, but if the probationary period has been completed, then such discharge must be for a cause. Any employee who has been discharged shall be entitled to receive a written statement of the reasons for such action as provided in the Personnel Ordinance and these rules.'' That does not signify a hearing before dismissal. Rule XVI (like section 13 of the ordinance) characterizes the action of the personnel board (after hearing the complaint of a civil servant) as ''findings and recommendations,'' and directs that copies thereof be delivered ''to the City Manager and to the employee affected by such findings and recommendations.''

The conclusion is inescapable that the only hearing to which plaintiff was entitled was a hearing after, not before, his dismissal, a hearing by a board that has power only to make recommendations to the city manager, not to reverse or modify his decision when he dismisses a civil servant.

Plaintiff stresses the requirement of rule XV that the discharge of a civil servant who has completed his pro-

bationary period "be for a cause" and cites a number of decisions to the effect that such a requirement denotes a full and formal hearing or trial to establish the cause, including *Steen* v. *Board of Civil Service Commrs.*, 26 Cal.2d 716, 723 [160 P.2d 816], and *La Prade* v. *Department of Water & Power*, 27 Cal.2d 47, 50 [162 P.2d 13]. This rule of interpretation applies, of course, when the statute, charter or ordinance which prohibits removal except for cause does not negative an inference of an intent to require a hearing. In the Steen case the Supreme Court significantly expressed this rule of interpretation in these words: "The rule is firmly established that if by statute an officer or civil service employee may not be removed or discharged except for cause, the clear implication is that there be afforded an opportunity for a full hearing to accomplish his removal; that *unless the statute expressly negatives the necessity of a hearing,* common fairness and justice compel the inclusion of such a requirement by implication." (P. 723 of 26 Cal.2d; emphasis added.) In our case, the Berkeley personnel rules, and the ordinance under which these rules were established, *expressly negative the necessity of such a hearing.*

(2) *Upon the day of his dismissal plaintiff received a written statement of the reasons for his dismissal* as provided in the personnel ordinance and rules. This statement was addressed to plaintiff, was signed by the fire chief, quoted that portion of section 12 of the ordinance (above quoted) which declared his right to request a hearing before the personnel board, informed plaintiff that a leave of absence theretofore granted had been cancelled and his services with the city terminated. It also said: "[t]he reason for such cancellation of your Leave of Absence and your termination as an employee of the City of Berkeley was due to violation of Section 8, of General Orders, Part One, Fire Department Rules and Regulations which reads, 'Commit any act for which he may be imprisoned whether on or off duty, in uniform or otherwise.' "

We think this was a sufficient "statement of the reasons" for the dismissal, viewed in the light of the following facts. February 12, 1949, plaintiff was involved in an automobile accident, arrested and charged with manslaughter. May 9 he was convicted of misdemeanor manslaughter. June 2 he was placed upon probation for two years conditioned that he serve the first six months of that period in a county jail. Meanwhile, Fire Chief Meinheit had several conversations with

plaintiff concerning the latter's status. The first of these was on February 12 when plaintiff was informed that if the case ended up with him going to jail, he would probably lose his job, to which plaintiff said "I understand that." They discussed the rules and regulations, and plaintiff said he knew the rules and regulations. Later, plaintiff was suspended for three days and was notified thereof. At the end of the suspension he came into the office and he and Meinheit discussed a leave of absence, Meinheit suggesting that plaintiff ask for a leave, which he did, it being the understanding, discussed by them at the time, that if there was any imprisonment involved, the chief would have no choice but to do what eventually was done. About March 15 plaintiff was given a one-year leave of absence without pay, the leave actually commencing March 23 because of nine days of vacation earned but not yet taken. The day before sentencing in the criminal case, plaintiff was in the chief's office; they again discussed the element of possible imprisonment and Meinheit told plaintiff that in a sentencing in such a case, the chief had no choice but to recommend plaintiff's dismissal, and plaintiff said "I understand that."

Upon rebuttal plaintiff denied that upon any of those occasions he said he was familiar with the rules or anything to that effect. Plaintiff admitted, however, that about February 12 Meinheit told him if he were sentenced to prison he would probably lose his job; that in the latter part of May, Meinheit told him practically the same thing, that if he were imprisoned he would lose his job; and that on June 1, the day before the sentencing, plaintiff called Meinheit on the phone asking how things looked for plaintiff and Meinheit "practically repeated the same thing." Upon cross-examination, plaintiff admitted he was at the time familiar with the rules and regulations of the fire department; knew that he was subject to discharge if he committed an act for which he might be imprisoned.

Three days after receipt of notice of dismissal plaintiff filed with the city manager, the personnel board and the city attorney, his answer and written demand requesting a hearing under the personnel ordinance. In that document he demonstrated that he understood the reason for his dismissal by his statement therein that the action of the city manager in dismissing him "was and is excessive and not consistent with and not warranted under the circumstances, the undersigned

354

having already been subjected to trial and punishment and the expenses incident thereto'' and ''is not lawful in that it places the undersigned twice in jeopardy, the undersigned having already been suspended from his employment for a period of 30 days for the same offense charged in said action and set forth in the letter and personnel action referred to herein.''

In view of these circumstances, there can be no doubt that the notice of dismissal constituted an adequate ''statement of the reasons'' for his dismissal.

The conclusions thus far expressed render unnecessary the consideration of other questions discussed by the parties upon this appeal.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.