Filed 5/31/23  Chui v. Chui CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORT

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| BENJAMIN TZE-MAN CHUI, as Trustee, etc., et al.<br><br>    Plaintiffs,<br><br>    v.<br><br>CHRISTINE CHUI, Individually and as Personal Representative, etc.,<br><br>    Defendant and Appellant;<br><br>JACQUELINE CHUI, a Minor, et al.,<br><br>    Appellants;<br><br>JACKSON CHEN, as Guardian, etc.,<br><br>    Respondent. | B310325<br><br>(Los Angeles County Super. Ct. No. BP154245) |

APPEAL from orders of the Superior Court of Los Angeles County, Gus T. May, Judge.  Reversed with directions.

Bohm Wildish & Matsen and James G. Bohm for Defendant and Appellant Christine Chui.

Ambrosi & Doerges and Mary E. Doerges Frey; Law Offices of Angela Hawekotte, Angela Hawekotte; Bohm, Wildish & Matsen, James G. Bohm, Nicholas P. Carrigan; Pastor Law Group and Nathan Pastor for Appellant Michael Chui.

Law Offices of Michael S. Overing, Michael S. Overing and Edward C. Wilde for Appellant Jacqueline Chui.

Hinojosa & Forer, Jeffrey Forer and Shannon H. Burns for Respondent Jackson Chen.

---

In this probate and trust litigation, the court appointed Jackson Chen as guardian ad litem for minors Jacqueline Chui and Michael Chui.[1] After the minors' mother, Christine Chui, filed a petition to remove Chen as the minors' guardian ad litem, Chen requested the court appoint counsel to defend him against Christine's attacks, which the court granted. Sixteen months later, Chen filed a petition to recover approximately $534,890 as his and the appointed counsel's fees, to be paid from the minors' share of the trust estate. Jacqueline and Michael, then 17 and 15 years of age, respectively, hired counsel to assert their objections to the fee petition and to petition for removal of Chen as their guardian ad litem. Chen successfully moved to disqualify the minors' counsel, and the court struck the minors' removal petitions. The court also appointed counsel to represent Jacqueline and Michael at the hearing on the fee petition. After the court granted Chen's fee petition, Jacqueline, Michael, and Christine appealed.

---

[1] Many of the parties share the same last name. To enhance readability and to avoid confusion, we refer to them by their first names. We intend no disrespect.

2

We agree with Jacqueline that the denial of her right to have her chosen counsel represent her with respect to Chen's fee petition constitutes a denial of due process, and that Chen has failed to show that the error was harmless. We therefore reverse with directions to hold a further hearing on the fee petition. In light of this holding, we decline to address other issues raised on appeal.

## FACTUAL AND PROCEDURAL SUMMARY

### A.    *Background*

King Wah Chui (King) and Chi May Chui (May) had three children: Robert Tak-Kwong Chui, Margaret Tak-Ying Chui Lee, and Esther Chao. Robert and his first wife Helena Chang Chui had a son, Benjamin Tze-Man Chui. Robert and Helena divorced, and Robert married Christine. Robert and Christine had two children, Jacqueline and Michael.

King and May are the settlors of a trust and three subtrusts (collectively, the King Trust). The assets of the King Trust consist primarily of interests in residential apartment complexes and related business entities, other real property, and financial accounts.

May died in 2004.

In October 2012, Esther, a beneficiary under the King Trust, filed a petition in the probate court concerning two subtrusts of the King Trust, commencing Los Angeles County Superior Court case No. BP137413. Esther alleged that King had become incapacitated, that Robert and Margaret were acting as co-trustees of the King Trust, and that Robert and Margaret had wrongfully delegated their fiduciary responsibilities to Robert's wife Christine.

In January 2013, Esther petitioned to have a guardian ad litem appointed for Jacqueline and Michael, who were then

3

10 years old and 8 years old, respectively. Esther asserted that Robert, the minors' father, "[was] in a coma" and that Christine, who had allegedly mismanaged the King Trust, "cannot act as [guardian ad litem because] she will protect herself and not her children." Esther predicted that the case "will be heavily litigated," and therefore the court should appoint "a probate lawyer with trial experience . . . to protect [the minors'] rights."

In March 2013, the court granted Esther's petition and appointed Chen as the minors' guardian ad litem in the case.

In April 2013, the court appointed Benjamin (Robert's son by his first marriage) and Margaret as co-trustees of the King Trust. Robert died in June 2013. King died in 2014.

Since the commencement of litigation in 2012, at least seven other probate and trust administration cases have been filed and deemed related to the case Esther commenced (case No. BP137413).[2] In one case (case No. BP145759), Christine was appointed guardian of the estates for Jacqueline and Michael. And in litigation concerning an insurance trust established by Robert and his first wife Helena (case No. BP145642 (the ILIT case)), the court appointed Christine guardian ad litem for Jacqueline and Michael. It does not appear that the court formally appointed a guardian ad litem in any other related case until March 3, 2020,

---

[2] The related cases are Los Angeles County Superior Court case Nos. BP143884 (concerning Robert's estate); BP145642 (concerning Robert and Helena's irrevocable life insurance trust (ILIT)); BP145759 (concerning the guardianship of the minors); BP154245 (concerning the estate of King and May); BP155345 (concerning Trust A); BC544149 (concerning litigation regarding Robert's estate); and BP162717 (concerning the King Chui and Chi May Chui life insurance trust).

when the court appointed Chen guardian ad litem for Jacqueline and Michael in most of the related cases.

### B.    *The May 2018 settlement and the first guardian ad litem agreement*

In May 2018, Esther, Christine, Benjamin, and Margaret resolved disputes among themselves in a settlement agreement, the terms of which were set forth orally in court.  Among other terms, Christine "disclaim[ed] any rights as a beneficiary of [the King Trust]," and agreed that only Chen (or his designee or court-appointed successor) can bring a claim on behalf of Jacqueline or Michael prior to their reaching the age of majority.  Chen was not present when the agreement was announced.  The provisions of the agreement "affecting [Jacqueline's and Michael's] interests and rights" were expressly subject to approval by Chen.  And, because the agreement compromised Jacqueline's and Michael's rights under the Trust, it also required the court's approval.  (Code Civ. Proc., § 372.)

In August 2018, Chen (as guardian ad litem for Jacqueline and Michael), Benjamin, Margaret, and Esther—but not Christine—signed what we described in *Chui v. Chui* (2022) 75 Cal.App.5th 873, 885–886 (*Chui I*) as the "first GAL agreement." In November 2018, Chen filed a petition to approve the first GAL agreement.

Meanwhile, beginning in July 2018, Christine filed various motions and petitions challenging the validity and enforceability of the original oral settlement and the first GAL agreement.  This litigation is summarized in two prior opinions from this court: *Chui I, supra,* 75 Cal.App.5th 873, and *Chui v. Chui* (2022) 86 Cal.App.5th 929 (*Chui II*).  The court rejected each challenge.

In addition to pursuing efforts to invalidate the first GAL agreement, Christine filed a motion in December 2018, to remove

5

Chen as guardian ad litem for Jacqueline and Michael and appoint herself in his place. Christine alleged, among other misconduct, that Chen committed fraud, negligence, unjust enrichment, intentional interference with an expected inheritance to the minors, intentional infliction of emotional distress to the minors, intentional misrepresentations and nondisclosure to the court, and breach of fiduciary duty.[3]

In response to Christine's motion, Chen applied ex parte to the trial court for approval to retain counsel "to represent him as guardian ad litem in these proceedings." Chen acknowledged that the court ordinarily appoints a guardian ad litem "with the expectation that [the] appointed [guardian ad litem] represents him[self] or herself." Chen stated, however, that because of "the high level of rancor Christine has demonstrated toward [Chen] and the nature of the allegations she is now making against [him]," it is in his and the minors' best interests "to retain counsel to represent him in defending against the claims made in Christine's [m]otion." Chen represented that attorney Jeffrey Forer had agreed to reduce his billing rate from $675 per hour to $500 per hour in representing Chen.

On January 16, 2019, the court granted Chen's application and appointed Forer of Hinojosa & Forer (H&F) "to represent . . . Chen," reserving "the right to reallocate . . . Chen's fees." The court did not further describe Forer's or H&F's role in the case. In the same order, the court vacated Christine's motion to remove Chen "as improperly filed," without prejudice to the filing of a procedurally proper petition to remove Chen.

---

[3] The motion, together with an accompanying memorandum of points and authorities and supporting evidence, encompass more than 800 pages of our record.

On February 1, 2019, Christine filed a petition to remove Chen as guardian ad litem alleging nine causes of action against Chen. Christine sought an order removing Chen as guardian ad litem and appointing her in his place, an order voiding all actions Chen had taken in the case, and sanctions against Chen "related to his intentional fraud and concealment to the court to harm the minors."[4] (Capitalization omitted.) Our record does not disclose whether Chen filed any response to this petition.

In April and May 2019, the court held a trial on Chen's petition to approve the first GAL agreement. Forer represented Chen in connection with the trial and subsequent proceedings. In July 2019, the court denied the petition. Chen, the court stated, had not proven "that the agreement is in both or either of the [minors'] best interests."

## C. *The second guardian ad litem agreement*

In December 2019, Chen, Benjamin, Margaret, and Christine participated in a mediation, which produced an agreement among the parties except for Christine. The agreement, which we referred to in *Chui I* as the second GAL agreement, was memorialized in writing in January 2020. (*Chui I, supra,* 75 Cal.App.5th at p. 888.) Chen promptly filed a petition for approval of the second GAL agreement and a petition to remove Christine as the minors' guardian ad litem and guardian of the person and estate of the minors in any case in which she had those roles, and to have

---

[4] Christine filed subsequent petitions to remove Chen in December 2019 and February 2020. Although the procedural history concerning each of Christine's petitions for removal of Chen is not clear in our record, it appears they were ultimately resolved in Chen's favor in an order issued on March 3, 2020.

himself appointed as the minors' guardian ad litem in all cases related to the May 2018 settlement.

After a hearing held on March 3, 2020, the trial court issued an order: (1) denying Christine's petition to remove Chen as guardian ad litem; (2) granting Chen's petition to be appointed guardian ad litem in all related cases, but one; and (3) granting Chen's petition to approve the second GAL agreement. In denying Christine's petition to remove Chen, the court stated that "there is no basis to remove Chen where he has successfully done his job by negotiating an approvable settlement for the minors, leaving them far better off than they were under the [first] GAL agreement."[5] (Capitalization omitted.) According to the court, its failure to appoint Chen guardian ad litem in the related cases previously was due to "its own oversight" and that, by appointing Chen, the court was "first and foremost remedying an administrative defect."

Christine, Jacqueline, and Michael, each represented by different attorneys, appealed from the court's March 3, 2020 orders. In January 2021, Forer, on behalf of Chen, filed a motion in this court to dismiss the appeals filed by Jacqueline and Michael, which we denied.

In March 2022, we affirmed the order in *Chui I*. (*Chui I*, *supra*, 75 Cal.App.5th 873.)

### D.   *Chen's fee petition*

On May 15, 2020, Chen filed a petition in the trial court for approval of his and H&F's fees and costs (the fee petition). Chen

---

[5] As we noted in *Chui v. Chui* (Mar. 2, 2022, B306918) [nonpub. opn.], Jacqueline and Michael's "collective net value under the settlement agreement and second GAL agreement would . . . be approximately $22 million—approximately $5 million more than what they were entitled to receive under the terms of the Trust."

8

sought: (1) $210,915 as fees for his services as guardian ad litem, plus costs of $1,456; and (2) $323,975 for H&F's fees, plus $7,102.35 in costs. In support of the petition, Chen states that he spent "no fewer than 468.7 hours" as guardian ad litem in the underlying cases and that his ordinary billing rate is $450 per hour. Chen attached to his declaration billing statements showing particular tasks and the time spent on each, and an itemized list of costs advanced.

Chen supported the claim for H&F's fees and costs with a declaration by Forer, which describes the work Forer and his H&F colleague Shannon H. Burns performed in connection with the case. Forer states that his regular billing rate is $675 per hour, but that he billed his time in this case at $500 per hour "as agreed upon by [the] [c]ourt." Burns's regular rate is $500 per hour, and she charged her time at the rate of $375 per hour in this case. Forer billed 452.5 hours on the case, and Burns billed 261.4 hours. H&F's itemized billings for the case are attached to the declaration.

In his petition, Chen did not specify the source from which payment for the fees and costs would be made. In a supplement to the fee petition, Chen clarified that he is seeking payment for his and H&F's fees and costs only from Jacqueline's and Michael's shares of the King Trust.

While the fee petition was pending, Jacqueline, who was then 17 years old, retained the firm of the Law Offices of Michael S. Overing (the Overing firm) to represent her. On June 15, 2020, the Overing firm filed on Jacqueline's behalf a petition to remove Chen as her guardian ad litem.[6] On October 1, 2020 the Overing firm filed an amended petition to remove Chen as her guardian ad litem

---

[6] Michael, who was then 16 years old, also retained counsel and filed a motion to remove Chen as his guardian ad litem.

(Jacqueline's removal petition). Among other arguments, Jacqueline asserted that Chen had never met or communicated with her during his seven-year representation of her and had recently taken positions contrary and hostile to her interests. In Jacqueline's view, Chen does not have "even the slightest concern or knowledge for her good. He is simply the man who is spending her inheritance without the courtesy of even saying 'hello.' " Jacqueline sought an order authorizing her "to appear without a guardian ad litem" or, in the alternative, "to proceed with a different guardian ad litem until her 18th birthday." She also requested that the court deny "Chen any fees for his actions as guardian ad litem." (Italics omitted.)

Chen responded to Jacqueline's removal petition by filing: (1) a motion to disqualify the Overing firm from representing Jacqueline; (2) an anti-SLAPP motion to strike Jacqueline's removal petition; and (3) a demurrer to Jacqueline's petition. Among other arguments, Chen asserted that Jacqueline did not have standing to seek Chen's removal because, as a minor, she "lacks legal capacity to make decisions or to contract," "to hire an attorney," or "to act independently."

On September 30, 2020, prior to the court's ruling on Chen's various challenges to Jacqueline's removal petition, the Overing firm filed a "special appearance" objection to the fee petition. (Boldface and capitalization omitted.) According to the objections, Chen's and H&F's billings reveal "systematic overcharging" by H&F. The Overing firm identified 49 events that appear on the billing statements of both Chen and Forer. For many of these events, Forer billed substantially more time than Chen, implying that either Forer overstated his time performing the task or Chen understated his. Jacqueline further argued that Forer had been retained for the limited purpose of representing Chen "in defending

10

against the claims made" in Christine's motion to remove him as guardian ad litem, and that Forer billed for work in excess of his appointment; indeed, Jacqueline asserted, Chen has been using "Forer to attack Jacqueline while expecting her to pay for his attacks." Jacqueline also argued that Forer failed to disclose a conflict of interest, and that Forer and Chen committed malpractice and breached duties owed to Jacqueline. Jacqueline requested that Chen's fee petition be denied or, at least, that the court conduct an evidentiary hearing.[7]

On October 5, 2020, Chen filed a "preliminary reply" to Jacqueline's objections to the fee petition. (Boldface and capitalization omitted.) In the preliminary reply, Chen asserted that Jacqueline does not have standing to object to the fee petition. The only parties with standing to object, Chen argued, are the trustees of the King Trust. Chen concluded that the court should strike Jacqueline's objections.[8]

On October 6, 2020, Christine filed objections to Chen's fee petition and requested an evidentiary hearing. Christine asserted that Chen and/or Forer should not recover fees, because among other reasons, they committed acts of "dishonesty, fraud, deceit, reckless or intentional misrepresentation to the [c]ourt," "breach[es] of duty against" the minors, "intentional interference with expected inheritance," and "moral turpitude and corruption

---

[7] There is a reference in our record to a notice of joinder in Jacqueline's objections filed by counsel for Michael. The referenced document, however, does not appear to be in our record.

[8] On appeal, Jacqueline asserts in her opening and reply briefs that the court struck her objections. She does not, however, cite to the record for any order explicitly striking her objections. Chen, however, does not dispute the point.

11

in waiving the [m]inors' interests, rights, and claims to over $100 million." She further alleged: Chen failed to bring any benefit to the minors; Chen had a conflict of interest in representing both minors and colluded with "adverse litigants"; Chen was derelict in his duty during a trial concerning the settlement agreement; H&F is "allied with" adverse parties; Chen should not recover for work performed on cases prior to his appointment on such cases; and Chen's and H&F's fees are excessive, duplicative, and unreasonable. Christine further asserted that, if fees are paid, they should be paid from the King Trust "in general, not from the children's shares."

Christine supported her objections with a declaration from Andre Jardini, an attorney specializing in auditing legal bills. Jardini opined that Chen's billing rate of $450 per hour is excessive and that some of Chen's time was duplicative of Forer's time. He concluded that Chen should be reimbursed, if at all, for 304.6 hours of time (instead of the 468.7 hours Chen claimed) at the rate of $250 per hour, for a total of $76,150. Jardini further opined that staffing at H&F "was inappropriate and excessive," the hours billed for certain tasks were excessive, there was unnecessary duplication of effort and "double billing entries," "inappropriately vague billing," and block billing. He concluded that H&F should be reimbursed for no more than 572.52 hours (instead of the 713.9 hours Forer claimed) for a total of $242,652.59.

On October 20, 2020, the trial court granted Chen's motion to disqualify Jacqueline's and Michael's attorneys and struck their petitions to remove Chen as their guardians ad litem, apparently on the basis that the petitions had been filed by the minors' chosen counsel. The court subsequently appointed Adam Streltzer to

represent Michael and Jacqueline "to review and respond" to Chen's fee petition.[9]

On December 24, 2020, Streltzer filed a report with his recommendations regarding the fee petition. Streltzer stated that, in addition to reviewing Chen's fee petition and supporting documents, he reviewed the objections to the petition filed by Christine and Jacqueline, and Chen's response to Jacqueline's objections.[10]

Streltzer noted that his review of the papers filed in the case revealed "a tendency towards overly-litigious behavior" among the "litigating parties" and that the litigants' goal appeared to be "simply to win at all costs and destroy the opposition without regard to the cost or scope of the proceedings or any diminution of the subject inheritance(s)." It was thus "a surprise [to Streltzer] that the amounts sought by . . . Chen and his lawyer are not significantly higher than claimed."

---

[9] The court stated that its appointment of Streltzer and Simon was made pursuant to Probate Code section 1470 and in case No. BP145759, which is concerned with the guardianship of the estates of Jacqueline and Michael.

[10] Streltzer further stated that he reviewed a "first supplement to Jackson Chen, guardian ad litem's petition for guardian ad litem fees and attorney's fees and costs," filed on June 3, 2020, and Michael's "notice of joinder and joinder in Jacqueline Chui's (special appearance) objection to [the fee petition]." (Capitalization omitted.) Neither of these documents is included in our record on appeal. According to Streltzer, in Chen's "first supplement," Chen "clarifies that he seeks payment of [the requested fees and costs] only from his wards' respective share of the subtrusts established under the [King Trust]." (Capitalization omitted.)

13

Streltzer pointed out that the probate court has a general standing order limiting the hourly rate for appointed counsel to $250 per hour, except in cases involving unusual problems requiring extraordinary expertise.  Streltzer concluded that Chen had not satisfied his burden to justify an hourly rate above this limit.  He explained that, although the case has been extremely litigious, difficult, and complex, "the issues before [the] [c]ourt are, substantively, merely traditional probate and trust law disputes concerning inheritance rights in real and personal property, including business entities," and that "the requirement of 'unusual problems requiring extraordinary expertise' " had not been satisfied.  Because the court had authorized Chen to retain counsel, Streltzer explained, "there is even less compelling reason for . . . Chen to charge his regular hourly attorney rate."  Moreover, even if Chen could justify the higher rate prior to the appointment of counsel to represent him, Streltzer agreed with Christine's expert, Jardini, that it would not be appropriate to compensate Chen at a rate above of $250 per hour after the appointment of counsel.

Streltzer objected to Chen's claim as to 26.3 hours of time spent attending depositions other than his own and time spent reviewing and revising certain law and motion papers.  Streltzer thus recommended that Chen should be awarded fees for 442.40 hours of work (instead of the 468.7 hours Chen claimed) at the rate of $250 per hour (instead of the rate of $450 per hour sought by Chen).

As for Forer's fees, Streltzer found that the billing rates Forer charged were fair and reasonable.  He agreed with Christine's expert, however, that Forer's claim should be reduced because there were instances when multiple attorneys were used "when a single attorney would suffice," when "lower-cost" employees were available

14

to perform work, and where certain time is described in block billing. When these reductions are taken into account, Streltzer concluded that Forer's claim of $323,975 should be reduced by $18,890.02 to $305,084.98.

In response to Streltzer's report, Chen argued that he is entitled to compensation at his regular rate of $450 per hour and that his time spent on the case should not be reduced. Forer did not contest the reductions to his firm's fees that Streltzer had proposed.

At the hearing on January 8, 2021, counsel appeared on behalf of Benjamin, Margaret, Christine, and Esther. Chen appeared as guardian ad litem for Jacqueline and Michael, Forer as counsel for Chen, and Streltzer as "limited purpose specially appointed counsel" for Jacqueline and Michael. Streltzer informed the court that Jacqueline "is nearly the age of majority and that she requests that this court continue the hearing and defer ruling on [the fee petition] until after her 18th birthday in March so that she may herself represent to the court what she believes is in her best interest." Streltzer further stated that he understands "that Michael Chui joins in that request." The court denied the request for a continuance.

The court also denied Christine's request for an evidentiary hearing, stating that the "court has discretion in attorneys fees matters in connection with a guardian ad litem appointment as to whether to rule on the declarations and the filings in the case already, and [found] that those are all sufficient. . . . [T]o the extent that there are any factual disputes, . . . either everything has been ruled upon already or those disputes are not materially relevant to the issue before the court today."

Regarding Chen's hourly rate, the court allowed the higher rate based on "the history of this case and the lengthy involvement in it." The court then approved Chen's fees as requested in the

petition and the reduced amount of Forer's fees in accordance with Streltzer's recommendation and Forer's concession. The court further approved of the request for reimbursement of costs. The court also directed Streltzer to file "a fee declaration" no later than February 8, 2021, and set a hearing on Streltzer's fee request for February 23, 2021. (Capitalization omitted.)

In the court's formal order concerning the fee petition, filed on February 1, 2021, the court ruled that the payments to Chen and Forer are to be made from Jacqueline's and Michael's "share of the sub-trusts established under the [King Trust] and NOT from the Trust as a whole."

On February 2, 2021, Forer served notice of the court's February 1, 2021 order on counsel for the parties and on the disapproved counsel for Jacqueline and Michael.

Christine and Jacqueline filed separate timely notices of appeal from the court's February 1, 2021 order granting Chen's fee petition. Michael did not appeal from the February 1, 2021 order, but did file a notice of appeal from an order entered on February 23, 2021.

## DISCUSSION

### A.    *Jacqueline's appeal*

Jacqueline contends that the order granting the fee petition must be reversed because the court denied her the opportunity to be heard on the fee petition through counsel of her choosing. We agree.

In his fee petition, Chen sought approximately $534,890 in fees for his and H&F's work to be paid from Jacqueline's and Michael's shares of the King Trust. When, as here, the result of a judicial proceeding may adversely affect a person's interest in property, constitutional due process generally requires that the

16

court provide the person with "a meaningful opportunity to be heard" in the proceeding. (*Boddie v. Connecticut* (1971) 401 U.S. 371, 379; see *Fuentes v. Shevin* (1972) 407 U.S. 67, 80 ["the central meaning of procedural due process" is that " '[p]arties whose rights are to be affected are entitled to be heard' "]; *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 313–314 [to accord with due process, an adjudication resulting in the deprivation of property must be preceded by notice and an opportunity for interested parties to present their objections].)

The right to be heard includes the right to be heard by counsel of one's choosing. (See *Powell v. Alabama* (1932) 287 U.S. 45, 68 [the right to a hearing includes "the right to the aid of counsel when desired and provided by the party asserting the right"]; *Steen v. Board of Civil Service Commrs.* (1945) 26 Cal.2d 716, 727 ["refusing to allow petitioner's counsel to participate in the proceeding" "was a denial of a hearing"].) This right generally applies to civil litigants, as well as criminal defendants. (*Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 925 ["constitutional due process guarantee[s]" "the right to be represented by retained counsel in civil actions"]; *Prudential Ins. Co. v. Small Claims Court* (1946) 76 Cal.App.2d 379, 382 ["in both civil and criminal cases the right to a hearing includes the right to appear by counsel"]; *Adir International, LLC v. Starr Indemnity and Liability Company* (9th Cir. 2021) 994 F.3d 1032, 1039 [courts recognize "a civil litigant's . . . due process right to retain and fund the counsel of their choice"].)[11] The right is not satisfied by the court's

_____

[11] The right to be represented by one's chosen counsel is not unlimited. The legislature and courts may, for example, require that counsel be a member of the bar and admitted to practice before the court in which he or she appears. (*McCuin v. Texas*

appointment of counsel for a party when the party seeks and can provide his or her retained counsel. (*People v. Crovedi* (1966) 65 Cal.2d 199, 206; see *Texas Catastrophe Property Ins. Assn. v. Morales* (5th Cir. 1992) 975 F.2d 1178, 1181 ["[t]he right to counsel in civil matters 'includes the right to choose the lawyer who will provide that representation' "].)[12]

"Minors, as well as adults, are protected by the Constitution and possess constitutional rights." (*Planned Parenthood of Missouri v. Danforth* (1976) 428 U.S. 52, 74; see *In re Gault* (1967) 387 U.S. 1, 13 ["neither the Fourteenth Amendment nor the Bill of Rights is for adults alone"].) More particularly, minors who have "sufficient capacity to exercise due process rights"—a state that presumably exists when the minor reaches 14 years of age—have the right to be heard in proceedings implicating such rights. (*In re Roger S.* (1977) 19 Cal.3d 921, 931.) A minor who has a due process

---

*Power & Light Co.* (5th Cir. 1983) 714 F.2d 1255, 1262.) And a party's chosen counsel may be disqualified when justified by "the need to maintain ethical standards of professional responsibility." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145.) These limitations do not apply in this case.

[12] In the proceedings below, Chen repeatedly stated that Jacqueline, as a minor, lacks legal capacity to retain counsel. This is incorrect. Generally, a minor may make a contract for the services of an attorney "in the same manner as an adult." (Fam. Code, § 6700.) Although the minor may be able to disaffirm the contract with the attorney (*ibid.*) and a court must approve a contract for "attorney's fees for services in litigation" (Fam. Code, § 6602; *Chui II, supra*, 86 Cal.App.5th at p. 937, fn. 12), there is no per se legal bar to a minor hiring counsel. Chen cited no apposite authority for his assertion, and he does not reassert this view on appeal.

18

right to be heard has the correlated right to be heard through counsel of his or her own choosing.  (See *In re Gault, supra*, 387 U.S. at p. 41 [juvenile has a due process right to counsel of their own choosing in delinquency proceedings].)

When the party asserting the right to a hearing is a minor for whom a guardian ad litem has been appointed, the assertion of the right to counsel and retention of counsel will ordinarily be initiated by the guardian ad litem.  (*Akkiko M. v. Superior Court* (1985) 163 Cal.App.3d 525, 529.)  When, however, the right the minor seeks to have counsel assert on his or her behalf conflicts with the interest of the guardian ad litem, the general rule that the guardian ad litem will retain counsel for the minor (or act as the minor's counsel) must give way to the minor's right to have counsel of his or her own choosing.  Thus, in *Chui II*, we held that the trial court erred by granting Chen's motion to disqualify Jacqueline's counsel and striking Jacqueline's petition to remove Chen as her guardian ad litem.  A "minor capable of making informed decisions," we explained, has the right "to have counsel assist with [a petition to the court for removal of a guardian ad litem] and to appear on the minor's behalf in court to advocate for the petition."  (*Chui II, supra*, 86 Cal.App.5th at p. 937.)

We expressly limited our holding in *Chui II* "to the right of a minor to have independent counsel in connection with a petition for the removal of his or her guardian ad litem" and expressed "no view as to whether or under what circumstances a minor for whom a guardian ad litem has been appointed may otherwise retain or be represented by counsel of their choosing."  (*Chui II, supra*, 86 Cal.App.5th at p. 937.)  The rationale that supported our narrow holding in *Chui II* supports the similarly narrow conclusion we reach here:  Minors with standing to object to a guardian ad litem's fee petition and capable of making informed decisions have the

19

right to a hearing on their objections and to have counsel of their choosing assist them in the matter. In both situations—the minor's petition to remove the guardian ad litem and the minor's objections to the guardian ad litem's fee petition—there is an inherent conflict between the minor and the guardian ad litem. In both situations, it would be patently unfair to give the guardian ad litem the power to select or act as the minor's counsel or, as Chen sought in this case, to deprive Jacqueline of her right to seek his removal or to object to his fee petition at all. Like the decision to deny Jacqueline her right to counsel in seeking to remove Chen, the court erred in denying Jacqueline her right to have her chosen counsel appear on her behalf to oppose the fee petition.

Because the denial of Jacqueline's right to counsel of her own choosing deprived her of her federal constitutional right to due process, Chen has the burden of establishing that the error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24. (See *In re B.D.* (2019) 35 Cal.App.5th 803, 827 [respondent's actions denying minor "of the assistance of fully informed counsel" was an "error of federal constitutional dimension," and respondent had the burden of proving lack of prejudice].) Chen, however, fails to respond meaningfully to Jacqueline's arguments on appeal and makes no attempt to show that the error was harmless under any standard.

Nor can we conclude from our review of the record that the error is harmless. Although the court appointed Streltzer "to review and respond" to Chen's fee petition, Streltzer did not address in his report or assert at the hearing many of the objections Jacqueline had asserted, and there is no indication in the record that the court considered Jacqueline's objections on their merits. Neither Streltzer nor the court, for example, addressed the points Jacqueline made that H&F sought fees for work that exceeded

20

the limited scope of Forer's appointment—to defend Chen against Christine's attacks—and that any award of fees should not be paid out of her share of the King Trust. Indeed, Streltzer admitted that he had "not inquired of either Jacqueline or Michael as to their positions concerning" Chen's fee petition and expressly disagreed with the minors' views in his report. Streltzer's representation of Jacqueline did not render the denial of her right to her own counsel harmless. Accordingly, the order awarding Chen and H&F their fees and costs is reversed and the matter remanded for a new hearing where all interested parties can be heard.

## B. *Michael's and Christine's appeals*

Michael did not appeal from the court's February 1, 2021 order granting Chen's petition for fees. His notice of appeal, filed on April 21, 2021, states that he is appealing from an order made on February 23, 2021. Michael did not include an order with that date in his appellant's appendix, as required (Cal. Rules of Court, rules 8.122(b)(1)(C) & 8.124(b)(1)(A)), and such an order is not otherwise included in the record on appeal. Michael did, however, include a copy of the court's February 23, 2021 minute order with his civil case information statement filed with this court. When read together with documents in our record, it appears that the February 23, 2021 minute order reflects the court's granting of a request for fees in the amount of $14,367.67 by Streltzer, the attorney the court appointed to represent Michael and Jacqueline to review and respond to Chen's petition for fees. Although the February 23, 2021 order refers to the court's receipt and review of objections filed to Streltzer's request for fees, no such objections are included in our record. (See Cal. Rules of Court, rules 8.122(b)(1)(C) & 8.124(b)(1)(B) [appellant must include in the appellant's appendix documents filed or lodged in the case that are

21

"necessary for proper consideration of the issues"].)**13** Michael's arguments on appeal are directed at the court's award of fees to Chen and Forer; he does not assert any point of error with respect to the February 23, 2021 order.

We requested Michael file a supplemental brief addressing the question whether we may deem his appeal from the February 23, 2021 order abandoned, and dismiss his appeal on that ground. Michael filed the requested brief. He explains that his notice of appeal inadvertently refers to the February 23, 2021 order, and that he intended to challenge the court's February 1, 2021 order granting Chen's motion for fees. He requests that we "liberally construe his notice of appeal and allow him to proceed on the appeal of the [February 1, 2021] order."

Because Michael does not present any argument concerning the order made on February 23, 2021, we deem his appeal from that order to be abandoned. (See *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544, fn. 8.)

The question Michael raises in his supplemental brief— whether we should construe his notice of appeal as being from the February 1, 2021—is moot because we are reversing that order for the reasons given in our discussion of Jacqueline's appeal, and the effect of the reversal is to place the parties in the position they were in "as if the matter had never been heard." (*Barron v. Superior Court* (2009) 173 Cal.App.4th 293, 300.) Michael will thus have the opportunity to assert his objections to Chen's fee petition, with the aid of retained counsel if he so chooses, when the matter is heard on

---

**13** Nor did Michael include the required register of actions (Cal. Rules of Court, rules 8.122(b)(1)(F) & 8.124(b)(1)(A)), which may reveal other pertinent documents concerning the February 23, 2021 order.

remand.  Because the order granting the fee petition is reversed, we do not reach the issues raised by Christine's appeal.

## DISPOSITION

The order granting guardian ad litem Chen's fee petition is reversed.  The court is directed to hold a new hearing on the fee petition consistent with the views expressed herein.

Appellant Jacqueline Chui is awarded her costs on appeal.

Appellants Christine Chui and Michael Chui and respondent Jackson Chen shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



BENDIX, J.